Michael O'ROURKE *v.* STATE of Arkansas

CR 89-145                                    778 S.W.2d 938

Supreme Court of Arkansas
Opinion delivered October 30, 1989

*Jeff Rosenzweig*, appointed counsel for petitioner.

*Steve Clark*, Att'y Gen., by: *Jack Gillean*, Asst. Att'y Gen., for respondent.

PER CURIAM. In 1986 the petitioner Michael O'Rourke was found guilty of capital murder and sentenced to death. We affirmed. *O'Rourke* v. *State*, 295 Ark. 57, 746 S.W.2d 52 (1988). Petitioner subsequently filed a petition to proceed in circuit court pursuant to Criminal Procedure Rule 37. On February 27, 1989, we granted petitioner permission to apply to the circuit court for an evidentiary hearing on two allegations of ineffective assistance of counsel. After an evidentiary hearing was held at which petitioner was represented by appointed counsel, Jeff Rosenzweig, the trial court entered an order denying post-conviction relief. Shortly after Mr. Rosenzweig lodged the record on appeal of the order, petitioner filed a *pro se* motion in which he stated that he did not wish to pursue the appeal or further litigation. He further stated in the heading of the motion that he wished to terminate Mr. Rosenzweig's services as counsel.

A condemned person may waive collateral challenges to his conviction and sentence provided he is mentally competent to do so. *Rees* v. *Peyton*, 384 U.S. 312 (1966); *Smith* v. *Armontrout*, 812 F.2d 1050 (8th Cir.), *cert. denied*, 107 S. Ct. 3277 (1987); *see Rumbaugh* v. *Procunier*, 753 F.2d 395 (1985); *Streetman* v. *Lynaugh*, 674 F. Supp. 229 (E. D. Tex. 1987); *see also Gilmore* v. *Utah*, 429 U.S. 1012 (1976). In *Rees* the United States Supreme Court set out the standard to be used in deciding whether a person under sentence of death is mentally competent

to choose to forgo further appeals and collateral attacks on his conviction and sentence. The test is

> Whether he has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

As the petitioner has alleged that he is competent and there can be no doubt that a competent person may avail himself of the right to abandon collateral remedies, we remand the case to the trial court for an evidentiary hearing on whether petitioner is competent under the standard announced in *Rees*. The trial court will appoint new counsel for the hearing.

Mr. Rosenzweig contends that petitioner is insane and that any action on this motion should be deferred pending disposition of the Rule 37 appeal, but counsel is not entitled to make the decision on whether his client is competent. While remanding this matter for a hearing may ultimately result in an even more protracted course than appears to be inevitable with most death penalty cases, the petitioner has a right to be heard.

The Rule 37 appeal is stayed and is subject to dismissal on proper motion if petitioner is found competent. If petitioner is declared incompetent to waive his post-conviction remedies, Mr. Rosenzweig will continue to represent petitioner in the Rule 37 appeal. (We decline to relieve Mr. Rosenzweig as the petitioner has not provided any good cause to remove him as attorney-of-record.)

Remanded.

HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. I dissent. By its action, the majority court has permitted, yet again, a defendant, convicted of capital murder, to take control of the judicial process. The result is predictable. These cases normally wind their way into the federal court process where they are never heard from again. *See Whitmore v. State*, 299 Ark. 55, 61, 271 S.W.2d 266, 268 (1989). In *Whitmore*, this court referred to capital cases that appeared to

have come to the end of the direct appeal and post-conviction relief processes, only to find the cases once again entered the federal district court system and seemingly disappeared. Several such cases are identified in *Whitmore*, one, *Miller* v. *State*, 269 Ark. 341, 605 S.W.2d 430 (1980), *cert. denied*, 450 U.S. 1035 (1981), having been filed in the federal district court in 1981. Miller's case has now been in the judicial system for *eleven years*, and it is anyone's guess when his case will end.

By allowing O'Rourke in this case the opportunity to withdraw his appeal, we add another step to the judicial process — a competency hearing *in a post-conviction proceeding* which will also require our later review of that hearing. In addition, if experience teaches us anything, O'Rourke's case, as it concerns the issue involving his competency and ability to waive his post-conviction appeal, will inevitably go to the federal court system and most likely end up before the Supreme Court. At any stage, O'Rourke may, as other convicted murder defendants have done in the past, decide he wants to reinstate his appeal on the merits. A few recent examples (there are others) where defendants, convicted of capital murder, have changed their minds to have their cases decided are as follows:

> *William Frank Parker v. State*: Parker notified his counsel and others after he was sentenced to death that he did not want to appeal. Prosecutor asked to have the appeal dismissed, but trial court declined. Parker's attorney filed a motion for stay of execution to which the Attorney General objected, citing Parker's request to waive appeal. Parker then notified parties that he had changed his mind and wanted an appeal after all. The case was subsequently reversed on appeal. Parker was retried and again received the death sentence. He again said he wanted to drop his appeals. The trial court held a hearing on the request this time, but he again changed his mind and decided to go on with the appeal, which is now pending in this court.

> *Barry Lee Fairchild v. State*: After Fairchild had exhausted state remedies and was proceeding in federal court, he notified Judge Eisele that he wished to abandon his federal remedies. Judge Eisele ordered a mental evaluation which resulted in Fairchild being declared

competent to waive further litigation and be executed. Fairchild changed his mind.

*Daniel Remeta v. State*: Remeta asked this court to allow him to dismiss his appeal so that he could be returned from Florida's deathrow to Arkansas and be executed here. This court remanded the case to the trial court for a hearing on his competence. He subsequently changed his mind and again decided to proceed with an appeal in this court.

To allow such a manipulation of the judicial process undermines any fair-minded person's confidence in our court system.

The state courts have no power to end those Arkansas capital murder cases that languish in the federal district court. Sometime the federal government, and particularly the judiciary, will have to resolve this serious failure to decide and dispose of capital murder cases that routinely spring into the federal court system after being resolved by the state courts. In fact, the manner in which the judiciaries as a whole, and the federal judiciary in particular, have handled these capital cases has been a public disgrace! A recent report reflects that there are now approximately 2,200 convicted murderers on death row awaiting execution, yet since 1972, only 116 executions have taken place. *See* Judicial Conference of the United States, Ad Hoc Committee on Federal Habeas Corpus in Capital Cases Report and Proposal, released to public on September 21, 1989.[1] Regardless of how poorly these capital cases have been administered in the past, this court need not add to the problem.

In *Franz v. State*, 296 Ark. 181, 194, 754 S.W.2d 836, 846 (1988) (Glaze, J., concurring in part and dissenting in part), I suggested that justice would be better served, and delays avoided, if the court automatically reviewed the lower court's record of the *sentencing phase* of the trial.[2] In his dissent, Justice Hays urged

---

[1] The Committee's report reflects the longest judicial proceeding concerning a death penalty case covered a period of fourteen years and six months, and the average period in such a proceeding is eight years and two months.

[2] The present case is a Rule 37, post-conviction proceeding, not a direct appeal. O'Rourke is not automatically entitled to post-conviction relief. Even so, this court granted O'Rourke's petition for an evidentiary hearing which he was given and from which he filed this appeal. Because this proceeding involves a capital murder offense, our

our court to adopt a procedure to review the argument of all possible prejudicial errors in cases where a sentence of death is imposed. *Id.* at 198, 754 S.W.2d at 848. I am now of the opinion that Justice Hays is correct. His suggestion of mandatory review in direct appeals of all capital cases not only would serve the ends of justice, it also would put the state courts in control of these cases so their treatment of them can be expedited.

Meanwhile, I would adopt the same mandatory review procedure in this post-conviction appeal, and deny O'Rourke's request to abandon his appeal.[3] In doing so, we can expeditiously discharge the state's responsibility in this important matter.

HAYS, J., joins this dissent.

---

court should consider and decide the case as expeditiously as possible rather than to foster and encourage further delays in the judicial process.

[3] This court in *Whitmore* v. *State*, abolished Rule 37 effective July 1, 1989, but provided that persons who have been convicted and sentenced during the Rule's existence may still proceed under that Rule. O'Rourke, of course, qualifies to proceed under Rule 37.