IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
(Heard at Nashville)
February 3, 2005 Session

## CHRISTA GAIL PIKE v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 68280,  Mary Beth Leibowitz, Judge**

--------

**No.  E2003-00766-SC-R11-PD - Filed May 12, 2005**

--------

This appeal presents two determinative issues: (1) whether post-conviction review of a death sentence should be mandatory and should proceed over the objection of a competent death-sentenced inmate; and if not, (2) whether, and under what circumstances, a competent death-sentenced inmate may revoke her waiver of post-conviction review.  We conclude that post-conviction review is not mandatory and may be waived by a competent death-sentenced inmate.  We also conclude that a competent death-sentenced inmate may revoke a waiver of post-conviction review so long as the revocation occurs within thirty days of the trial court's order permitting the inmate to waive post-conviction review.  Our holding is limited to death-sentenced inmates who seek to revoke an initial waiver of post-conviction relief.  Our holding does not apply to death-sentenced inmates who attempt to manipulate and to delay the judicial process by repeatedly seeking to waive and thereafter to reinstate post-conviction review.  Applying this rule, we conclude that Christa Gail Pike may revoke her waiver and reinstate her post-conviction petition.  Pike filed a motion seeking to revoke her waiver on the twenty-ninth day after the trial court filed its order permitting her to waive post-conviction review.  Pike had not previously waived post-conviction review.  Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand this case to the trial court with instructions to reinstate the petition for post-conviction relief and to schedule an evidentiary hearing.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Reversed; Remanded to the Trial Court**

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER and WILLIAM M. BARKER, JJ., joined.

Donald E. Dawson, Post-Conviction Defender, and Catherine Y. Brockenborough, Assistant Post-Conviction Defender, Nashville, Tennessee, for the appellant, Christa Gail Pike.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General, Alice B. Lustre, Assistant Attorney General; and Leland Price and S. Jo Helm, Assistant District Attorneys

General, for the appellee, State of Tennessee.

Wade V. Davies, Knoxville, Tennessee, for Amicus Curiae, Tennessee Association of Criminal Defense Lawyers.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for Amicus Curiae, National Association of Criminal Defense Lawyers.

Bradley A. MacLean, Nashville, Tennessee, for Amicus Curiae, National Alliance for the Mentally Ill.

**OPINION**

## I. Procedural History

A jury convicted Christa Gail Pike of first degree murder and imposed a sentence of death for her role in the brutal killing of a fellow student at the Job Corps Center in Knoxville.[1] The Court of Criminal Appeals and this Court affirmed Pike's convictions and sentences, and the United States Supreme Court denied her petition for a writ of certiorari. State v. Pike, 978 S.W.2d 904 (Tenn. 1998), cert. denied, 526 U.S. 1147 (1999).

On June 3, 1999, Pike timely filed a pro se petition seeking post-conviction relief.[2] The trial court appointed the Office of the Post-Conviction Defender to represent Pike. During a hearing on June 25, 2001, Pike orally advised the trial court of her desire to withdraw her post-conviction petition and to schedule an execution date. The trial court advised Pike to discuss her options with her attorneys and to listen to their advice and instructed her to file a written motion seeking waiver if she persisted in her desire to waive post-conviction review.

Approximately two months later, on September 4, 2001, Pike submitted to the trial court a letter reiterating her desire to withdraw her post-conviction petition and to schedule an execution date. At an October 2001 hearing, the trial court pointed out that the courts of this State had not

---

[1]The evidence offered to establish Pike's guilt was summarized in State v. Pike, 978 S.W.2d 904 (Tenn. 1998). The jury found two aggravating circumstances: (1) the murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death, and (2) the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another. Tenn. Code Ann. § 39-13-204(i)(5), (6) (1997). The jury also convicted Pike of conspiracy to commit first degree murder, and the trial judge imposed a twenty-five-year sentence for that conviction.

[2]As grounds for post-conviction relief, Pike alleged that her trial attorneys had been ineffective, that her confession had been coerced, that the prosecution had introduced illegally-seized evidence, and that the prosecution had failed to disclose evidence favorable to the defense.

previously adjudicated a death-sentenced inmate's request to waive post-conviction review.[3] After questioning Pike and confirming that Pike remained unchanged in her desire to waive post-conviction review, the trial court concluded that Pike has the right to make that choice "as long as she is competent." The trial court then appointed Dr. William Kenner to conduct a psychiatric evaluation to determine Pike's competency and directed Dr. Kenner to submit to the trial court a written report of his findings.

Dr. Kenner interviewed Pike, reviewed Pike's psychological records and submitted his written report to the trial court. On June 25, 2002, one year after Pike orally announced her desire to withdraw her post-conviction petition, the trial court conducted an evidentiary hearing to determine Pike's competence. The trial court considered Dr. Kenner's written report and heard testimony from several witnesses. Dr. Kenner did not testify at the hearing. Neither the district attorney general nor counsel for Pike received Dr. Kenner's written report until the morning of the hearing.[4] Ultimately, the trial court found that Pike had "freely and voluntarily" decided to withdraw her petition and to waive post-conviction review. The trial court commented: "Miss Pike has the right as a competent individual . . . to make a decision about her case, whatever all of us feel about that decision, and I grant her . . . motion to withdraw her appeals."

On June 27, 2002, the trial court filed a written judgment dismissing Pike's petition and setting an execution date. One day later, the trial court filed an amended judgment. On July 8, 2002, Pike's attorneys filed a notice of appeal. On July 26, 2002, the twenty-ninth day after the trial court filed its order finding Pike competent and granting her request to withdraw her petition, Pike's attorneys filed a second notice of appeal, and a supporting affidavit, each of which Pike had signed. Also on July 26, Pike filed in the trial court through her attorneys a motion seeking to vacate the order dismissing her petition, to reinstate her post-conviction petition, and to set a date for an evidentiary hearing on her post-conviction petition. Attached to this motion was Pike's sworn statement explaining that she had changed her mind and that she wished to "go forward" with the post-conviction proceeding. Pike's handwritten addendum to the sworn statement explained: "I still feel conflicted about what I want to do, but as of now I feel this is the only logical decision."

The State filed a motion to dismiss the appeal, arguing that the trial court's June 27 and June 28 orders were not appealable as of right and that Pike's attorneys lacked standing to pursue an appeal. On August 1, 2002, the Court of Criminal Appeals denied the State's motion to dismiss,

---

[3]The trial court commented, "We are all plowing fairly new ground." The initial hearings in this case occurred prior to this Court's November 21, 2002, Order which added section 11 to Tennessee Supreme Court Rule 28. Section 11 delineates procedures which trial courts must follow when a death-sentenced inmate seeks to withdraw a post-conviction petition and to waive post-conviction review.

[4]Pike has challenged several procedural aspects of the competency hearing, arguing that certain procedures did not comport with due process. Pike complains in particular about the timing of the disclosure of Dr. Kenner's written report and the fact that Dr. Kenner did not testify at the hearing. Because we are directing the trial court to reinstate Pike's petition and resume post-conviction proceedings, we need not address Pike's challenges to the procedures employed at the competency hearing. We also deny as moot Pike's motion to supplement the record on appeal with Dr. Kenner's Addendum to Psychiatric Report.

granted a stay of execution, and remanded the case to the trial court for a hearing on Pike's motion to vacate the order dismissing her post-conviction petition.

The hearing on remand occurred on February 20, 2003. Pike's attorneys urged the trial court to grant the motion and to reinstate Pike's post-conviction petition. Relying upon Tennessee Supreme Court Rule 28, section 11, they argued that the order dismissing Pike's petition had not been final when Pike moved to reinstate her petition. Pike's attorneys relied in particular upon section 11(A)(4), which provides in pertinent part that "[a]n order of the trial court granting withdrawal and dismissing the petition shall become final thirty days after its entry."

Testifying at this hearing, Pike confirmed that she had changed her mind about waiving post-conviction review and emphasized that it was her desire to reinstate her post-conviction petition. Pike explained that she had not fully understood "exactly how final" her decision to withdraw her post-conviction petition and waive further appeals would be. Pike also maintained that she had not understood how her decision to waive post-conviction review would affect her family. Pike testified that she then realized that her life meant more "than being stuck in that little room" and that she had reasons to pursue post-conviction relief. Pike assured the trial judge that no one had influenced her decision-making—she stated that she had decided on her own to withdraw her post-conviction petition and that she later decided on her own to revoke her withdrawal. Pike also reported experiencing "great improvement" in her mental health since Dr. Kenner had prescribed for her an anti-depressant in addition to lithium.

The trial court denied Pike's motion to vacate the order dismissing her post-conviction petition, stating:

> Again, we are in a court of law bound by rules. To me this is most akin to a decision to waive one's right to enter . . . a plea. When one does that and . . . make[s] a binding decision and the Court accepts that decision, just like in this case, even five minutes later, they cannot change their mind unless they can show that their will has been overborne or . . . they did not understand their rights. Only then would a guilty plea be overturned.

The trial court further found that Pike's will had not been overborne "then or now" and that Pike had simply changed her mind. The trial court commented, "Unfortunately, I do not think she can just do that under this situation." Accordingly, the trial court denied Pike's motion seeking to vacate the dismissal order and to reinstate her post-conviction petition. Pike appealed, and the Court of Criminal Appeals affirmed. We granted Pike's application for permission to appeal.

## II. <u>Waiver of Post-Conviction Review</u>

We first consider Pike's argument that post-conviction review of death sentences should be mandatory, regardless of a competent death-sentenced inmate's desire to waive post-conviction

review. Pike argues that mandatory review is necessary to ensure the reliability of the process by which death sentences are imposed.

We have previously recognized that post-conviction procedures are not constitutionally required. Serrano v. State, 133 S.W.3d 599, 604 (Tenn. 2004) (citing cases). The Post-Conviction Procedures Act[5] is a statutory remedy, and the nature and availability of post-conviction relief lies within the discretion of the legislature. Id.; see also Blair v. State, 969 S.W.2d 423, 425 (Tenn. Crim. App. 1997); Oliphant v. State, 806 S.W.2d 215, 217 (Tenn. Crim. App. 1991). "When there is no constitutional or statutory mandate, and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy." Serrano, 133 S.W.3d at 604 (quoting Schick v. United States, 195 U.S. 65, 72 (1904)). Although the Tennessee General Assembly has mandated limited appellate review of a sentence of death, even if a defendant chooses not to appeal the conviction of first degree murder,[6] no similar statute mandates post-conviction review of a death sentence. Like all other inmates, death-sentenced inmates must initiate post-conviction proceedings by filing within the statutorily prescribed time period a petition seeking post-conviction relief. See Tenn. Code Ann. § 40-30-102(a) (2003) ("Except as provided in subsections (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred."). Although the legislature has provided death-sentenced inmates an opportunity to seek post-conviction relief, the legislature has not mandated post-conviction review.

Pike nonetheless asserts that this Court should mandate post-conviction review of death sentences. We decline to do so. Courts have long recognized the right of competent defendants to make decisions concerning their available legal remedies. See, e.g., Jones v. Barnes, 463 U.S. 745, 751 (1983) (recognizing that competent defendants may choose "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"); Serrano, 133 S.W.3d at 604 (holding that an inmate in a non-capital case may waive post-conviction review); State v. Smith, 993 S.W.2d 6, 13-16 (Tenn. 1999); Momon v. State, 18 S.W.3d 152, 161 (Tenn. 1999) (recognizing the right of a defendant to waive personally the fundamental right to testify); Zagorski v. State, 983 S.W.2d 654, 658-59 (Tenn. 1998) (recognizing the right of a competent defendant to forego the presentation of mitigating evidence at a capital sentencing hearing); Collins v. State, 670 S.W.2d 219, 221 (Tenn. 1984) (holding that a defendant may waive the right of direct appeal).

Furthermore, the United States Supreme Court has recognized the right of a mentally competent death-sentenced inmate to waive further appellate review. Demosthenes v. Baal, 495 U.S. 731, 735 (1990); Whitmore v. Arkansas, 495 U.S. 149, 165 (1990); Gilmore v. Utah, 429 U.S. 1012, 1016 (1976). In addition, this Court has implicitly recognized the right of a competent death-

_____

[5]Tenn. Code Ann. §§ 40-30-101-122 (2003).

[6]Tenn. Code Ann. § 39-13-206(a)(2) (2003).

sentenced inmate to forgo post-conviction review. On November 26, 2002, this Court affirmed the convictions and death sentences of Paul Dennis Reid and, in accordance with a statutory directive, scheduled Reid's execution for April 29, 2003.[7] State v. Paul Dennis Reid, Jr., No. M1999-00803-SC-DDT-DD, slip op. at *1 (Tenn. 2003) (memorandum opinion and order). On March 26, 2003, Reid filed pro se in this Court a notice indicating that he did not intend to pursue available post-conviction remedies. Id. Nineteen days before Reid's scheduled execution, the assistant public defender who had represented Reid on direct appeal filed a motion seeking a stay of execution and a remand to the trial court for an evidentiary hearing to determine Reid's competence. Id. at *2. In denying the motion, this Court stated:

> Mr. Reid has clearly indicated that he has no desire to pursue any post-conviction remedies. The reasons given for this choice—that he has lost confidence in the judicial system, and that he has been convicted of seven "egregious" homicides—are certainly not irrational. As the United States Court of Appeals for the Sixth Circuit has observed: "We must not assume that it is impossible for even a death-sentenced prisoner to recognize the justice of his sentence and to acquiesce in it."

Id. at *3 (quoting West v. Bell, 242 F.3d 338, 343 (6th Cir. 2001)). Although we noted that Reid could initiate post-conviction proceedings prior to the scheduled execution date, should he so choose, we refused to grant Reid a stay or to order further proceedings in the absence of any new factual assertions calling Reid's competency into question. Id. at *3. Our adoption of Tennessee Supreme Court Rule 28, section 11, which sets out procedures trial courts must follow when a death-sentenced inmate seeks to withdraw a post-conviction petition, also implicitly recognizes the right of a competent death-sentenced inmate to waive post-conviction review.

Nevertheless, as support for her assertion that death-sentenced inmates should not be permitted to waive post-conviction review, Pike relies upon State v. Martini, 677 A.2d 1106 (N.J. 1996). In Martini, a death-sentenced inmate sought to waive post-conviction review by dismissing the application for post-conviction relief filed on his behalf by the Office of the Public Defender. Id. at 1108. Following a court-ordered psychiatric evaluation and a competency hearing, the trial court found Martini to be competent and determined that Martini had voluntarily chosen to forgo further appeals. Id. The New Jersey Supreme Court affirmed the trial court's findings but nonetheless refused to permit Martini to waive post-conviction review, citing the Court's state constitutional duty to "ensure the integrity of death sentences in New Jersey." Id. at 1112. The Court reviewed New Jersey precedent which precluded competent capital defendants from waiving either the presentation of mitigation evidence or the direct appeal of their convictions and sentences. Id. at 1109. Characterizing post-conviction review as a continuation of "meaningful appellate review" and as a safeguard essential to ensuring the reliability of capital sentencing, the Court

---

[7]Tennessee Code Annotated section 40-30-120(a) (2003) provides in relevant part:
> When affirming a conviction and sentence of death on direct appeal, the Tennessee supreme court shall contemporaneously set a date for an execution. Such date shall be no less than four (4) months from the date of the judgment of the Tennessee Supreme Court.

refused to permit competent inmates to waive post-conviction review. Id. at 1112-13. The Court explained its ruling as follows:

> Under our form of government it is not the inmate on death row or the accused who determines when and whether the State shall execute a prisoner; rather, the law itself makes that determination. The public has an interest in the reliability and integrity of a death sentencing decision that transcends the preferences of individual defendants.

Id. at 1107.

In urging this Court to follow Martini, Pike asserts that allowing a death-sentenced inmate to waive post-conviction review "denies the people of the State of Tennessee the right to ensure that only individuals who have received a death sentence through a constitutional process are executed." Pike maintains that the public's interest in ensuring the fair, reliable, and consistent administration of the death penalty in Tennessee outweighs a death-sentenced inmate's interest in discontinuing litigation.

We decline to mandate post-conviction review of a death sentence over the objection of a competent death-sentenced inmate. As the State points out, New Jersey is the only jurisdiction to adopt such a rule, and such a rule is not mandated by United States Supreme Court precedent. Furthermore, as one commentator has explained:

> A defendant seeking to waive proceedings for the first time at the post-conviction relief stage is more likely to have been appropriately convicted and sentenced than a defendant seeking to waive proceedings at the early stages. Such a defendant has received a full trial, full sentencing hearing and full appellate review. Every stage serves as a checkpoint, an additional safeguard filtering out the impurities. A defendant is less likely to be wrongfully sentenced to death after each stage. Information is gained at the completion of each stage. Any other conclusion would suggest that each proceeding serves no valuable purpose and would degrade the entire capital proceeding to nothing more than a random game of chance. Therefore, because each stage reduces the chance that a defendant has been inappropriately sentenced to death, the risk of arbitrary application of the death penalty is much lower at the post-conviction relief stage than at previous stages.

Anthony J. Casey, Maintaining the Integrity of Death: An Argument for Restricting a Defendant's Right to Volunteer for Execution at Certain Stages in Capital Proceedings, 30 Am. J. Crim. L. 75, 103 (2002). Mandatory post-conviction review could possibly ensure a greater degree of reliability in the process by which death sentences are imposed. Without question, mandatory post-conviction

review would eliminate the delay[8] and expense occasioned by hearings and litigation to determine whether a death-sentenced inmate is competent to waive post-conviction review and whether a death-sentenced inmate may revoke a waiver of post-conviction review. See O'Rourke v. State, 778 S.W.2d 938, 939 (Ark. 1989) (Glaze, J., dissenting) (opining that justice would be better served and delays avoided were the Arkansas Supreme Court to mandate post-conviction review in capital cases and to refuse to permit waiver of post-conviction review by competent death-sentenced inmates). These are policy considerations that are more appropriately directed to the legislature. State v. Godsey, 60 S.W.3d 759, 772 (Tenn. 2001). Upon weighing the competing policy considerations, the legislature may choose to mandate post-conviction review in death penalty cases, just as it has mandated limited direct appellate review of death sentences. Nevertheless, in the absence of a constitutional or statutory imperative, we decline to mandate post-conviction review, and we hold that such review may be waived by a competent death-sentenced inmate. Our holding is consistent with the rule applied in numerous other jurisdictions. See, e.g., Sanchez-Velasco v. Sec'y of Dept. of Corr., 287 F.3d 1015, 1033 (11th Cir. 2002); Smith v. Armontrout, 812 F.2d 1050, 1059 (8th Cir. 1987); Rumbaugh v. Procunier, 753 F.2d 395, 398-99 (5th Cir. 1985); Groseclose ex rel. Harries v. Dutton, 594 F.Supp. 949, 959 (M.D. Tenn. 1984); O'Rourke, 778 S.W.2d at 938-39; In Re Ross, 866 A.2d 554, 562 (Conn. 2005); Durocher v. Singletary, 623 So.2d 482, 483 (Fla. 1993); Corcoran v. State, 820 N.E.2d 655, 664 (Ind. 2005); State v. Ashworth, 706 N.E.2d 1231, 1236 (Ohio 1999); Bryant v. Thompson, 922 P.2d 1219, 1223 (Or. 1996); Commonwealth v. Bronshtein, 729 A.2d 1102, 1106 (Pa. 1999); cf. Serrano, 133 S.W.3d at 604 (holding that, in the absence of a constitutional or statutory mandate, inmates in non-capital cases may waive post-conviction review); Murray v. Giarratano, 492 U.S. 1, 10 (1989) (refusing to hold that the Eighth Amendment requires that appointed counsel be provided death-sentenced inmates in state post-conviction proceedings and commenting that "[t]he additional safeguards imposed by the Eighth Amendment at the trial stage of a capital case are, we think, sufficient to assure the reliability of the process by which the death penalty is imposed").

### III. Revocation of Waiver

Pike next contends that her petition for post-conviction relief was never legally withdrawn because she moved to vacate the order dismissing her petition before the order became final. Pike argues that a death-sentenced inmate should be allowed thirty days within which to revoke a waiver of post-conviction review. Pike claims that affording a death-sentenced inmate thirty days to revoke or to withdraw a waiver of post-conviction relief is consistent with Tennessee Rule of Criminal Procedure 32(f) ("Rule 32(f)"). Rule 32(f) provides:

> A motion to withdraw a plea of guilty may be made upon a showing by the defendant of any fair and just reason only before sentence is imposed; but to correct manifest injustice, the court after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw the plea.

---

[8] For example, should the legislature mandate post-conviction review of death sentences, this litigation, which began in June of 2001, would have been unnecessary.

Applying the analytical framework of Rule 32(f), the trial court denied Pike's motion to vacate. The trial court found that permitting Pike to reinstate her post-conviction petition was not necessary "to correct manifest injustice." The Court of Criminal Appeals affirmed.

The State maintains that the lower courts appropriately analogized the circumstances of this case to Rule 32(f) and correctly applied its "manifest injustice" standard. According to the State, Pike "offered nothing beyond a change of heart and deference to her family's feelings in support of her request to withdraw her motion to dismiss." Therefore, the State avers that Pike failed to support her motion by a showing of manifest injustice and that, in the absence of such a showing, the trial court properly denied Pike's motion to vacate her waiver and to reinstate her post-conviction petition.

Whether and under what circumstances a competent death-sentenced inmate may revoke a waiver and resume post-conviction review is a question of first impression. "Neither the Tennessee Rules of Civil Procedure nor the Tennessee Rules of Criminal Procedure apply to post-conviction proceedings" except as specifically provided by the Supreme Court Rules. See Tenn. S. Ct. R. 28, § 3(B). However, Tennessee Supreme Court Rule 28, section 11 does not answer this question. Nor do other generally applicable rules of procedure provide an answer.

Nonetheless, when an issue arises for which no procedure is specifically prescribed, Tennessee courts have inherent power to adopt appropriate rules of procedure. State v. Mallard, 40 S.W.3d 473, 480-81 (Tenn. 2001); Van Tran v. State, 6 S.W.3d 257, 264-65 (Tenn. 1999); State v. Reid, 981 S.W.2d 166, 170 (Tenn.1998); see also Tenn. Code Ann. § 40-30-118 (2003) (recognizing this Court's authority to promulgate "rules of practice and procedure" for post-conviction proceedings). As we explained in Reid, such supplementary rules "must be consistent with constitutional principles, statutory laws, and generally applicable rules of procedure," and "trial courts should pattern such rules upon analogous generally applicable rules of procedure." Reid, 981 S.W.2d at 170.

The trial court herein adhered to the principles enunciated in Reid.[9] In dealing with Pike's motion to vacate, the trial court identified Rule 32(f) as the most analogous generally applicable rule of procedure. We agree that Rule 32(f) is the most analogous generally applicable rule of procedure and that it is a proper point of departure for our analysis. However, the analogy breaks down insofar as Rule 32(f) applies a lenient standard to motions filed before imposition of sentence and a stricter standard to motions filed after imposition of sentence. Imposition of sentence does not occur in post-conviction proceedings, and there is no readily comparable procedural event in post-conviction proceedings. Thus, in determining whether to permit Pike to revoke her waiver, the courts below had no clear basis on which to choose between the lenient "any fair and just reason" standard and the strict "to prevent manifest injustice" standard. The courts below apparently equated the order dismissing Pike's petition with the imposition of sentence and therefore evaluated Pike's motion

---

[9]Furthermore, the procedures the trial court applied when faced with Pike's request to waive post-conviction review closely resemble the procedures thereafter adopted and included in Supreme Court Rule 28, section 11.

under the strict "to prevent manifest injustice" standard of Rule 32(f). Upon careful consideration, we are not convinced that either of the Rule 32(f) standards provides the appropriate framework for analysis in the context of this case.

Admittedly, we have herein declined to mandate post-conviction review of death sentences. Nevertheless, in exercising our inherent power to fashion an appropriate rule of procedure, we must be mindful that "a sentence of death is final, irrevocable, and 'qualitatively different' than any other form or level of punishment." Van Tran v. State, 66 S.W.3d 790, 809 (Tenn. 2001). We also must take into account the existing statutory limitations on post-conviction remedies, which likely would bar a second post-conviction petition by a death-sentenced inmate who has sought and obtained dismissal of an initial post-conviction petition.[10] Given the unique nature of the death sentence and the existing statutory limitations on post-conviction remedies, we hold that a death-sentenced inmate whose request to waive post-conviction has been granted must be allowed thirty days from the trial court's order dismissing the petition to revoke the waiver.[11]

We emphasize the limited scope of our holding. Pike had not previously waived or attempted to waive post-conviction review. Had she done so, a very different case would have been presented. We need not and do not in this appeal adopt a rule which applies in such cases. Our holding herein affords to death-sentenced inmates a single thirty-day period to unilaterally revoke an initial waiver of post-conviction review. This holding does not afford, and should not be applied to afford, death-sentenced inmates a means by which to manipulate and to delay the judicial process.

In this case, Pike filed within thirty days her motion seeking to vacate the trial court's order dismissing her post-conviction, to reinstate her post-conviction petition, and to schedule an evidentiary hearing. Therefore, applying our holding, Pike's petition for post-conviction must be reinstated and an evidentiary hearing must be scheduled. Counsel for Pike should prepare for and proceed with the evidentiary hearing as expeditiously as possible and make every effort to avoid unnecessary delay.

### IV. Conclusion

Having concluded that the July 26, 2002, motion to vacate shall be granted, we remand this case to the trial court with instructions to reinstate Pike's post-conviction petition, to schedule an evidentiary hearing, and to resume post-conviction proceedings. Costs of this appeal are taxed to

---

[10] The legislature has imposed a one-year statute of limitations for the filing of a petition for post-conviction relief, has provided a one-petition rule, and has prescribed limited grounds for re-opening. Tenn. Code Ann. § 40-30-102 (2003).

[11] In so holding, we follow the lead of the Pennsylvania Supreme Court which permitted a death-sentenced inmate to retract his waiver and to reinstate his petition for post-conviction relief. See Commonwealth v. Saranchak, 810 A.2d 1197, 1200 (Pa. 2002) ("In light of the subject matter, considering the existing restraints on serial petitions, given that the General Assembly has not spoken to the present situation, and recognizing the guiding preference for merits review in capital cases, we believe that the better course lies with the reinstatement alternative.")

the State of Tennessee, for which execution may issue if necessary.

_____
FRANK F. DROWOTA, III,
CHIEF JUSTICE