IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2012

## JOSE JUAN FRIERSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-C-2263     Mark J. Fishburn, Judge**

---

**No. M2011-01665-CCA-R3-PC - Filed December 11, 2012**

---

The Petitioner, Jose Juan Frierson, entered a "best interest" plea, on January 7, 1999, to criminal attempt to commit aggravated rape and was ordered to serve an eight-year split-confinement sentence. The Petitioner filed a petition for post-conviction relief on December 30, 2009, alleging that he was entitled to the tolling of the one-year statute of limitations period for post-conviction petitions due to his mental incompetence. The Petitioner further alleged that his guilty plea was not knowing and voluntary because the trial court failed to ensure that he was aware that the sentence included a requirement of lifetime supervision. After hearings on the petition, the post-conviction court entered an order denying post-conviction relief. The Petitioner filed, at the same time, both an appeal to this Court and a motion for new trial. Thereafter, the post-conviction court issued a subsequent order granting post-conviction relief. Upon our review of the record, we conclude that the subsequent order granting post-conviction relief is void because the trial court lacked jurisdiction to enter the second order. As to the first order denying post-conviction relief, we affirm the judgement of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Richard C. Eason, Nashville, Tennessee, for the appellant, Jose Juan Frierson.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

1

## OPINION

### I. Facts

This case arises from the Petitioner's attempt to rape the victim, during which he caused the victim bodily injury. For this conduct, a Davidson County grand jury indicted the Petitioner for aggravated rape. On January 7, 1999, the Petitioner entered a "best interest" plea to the lesser-included offense of attempted aggravated rape.

### A. Guilty Plea Submission Hearing

At the guilty plea submission hearing, the State offered the following facts as a basis for the Petitioner's guilty plea:

> [T]he proof would show that on June the 19[th], 1998, in the early morning hours, the [Petitioner] forced the victim . . . to have sexual intercourse with him without her consent. He - - the officer who responded to the 911 call observed bruising and scratches on her arms and bruising on her neck. The medical personnel who performed the MLE also observed these same bruises on her arms and on her neck.

The Petitioner told the trial court that he wished to enter a plea of guilt and that his attorney had reviewed the plea agreement with him. The trial court advised the Petitioner of his constitutional rights, and the Petitioner stated that he understood his rights. The trial court then explained to the Petitioner the rights he would be waiving in proceeding with a guilty plea. The trial court reviewed the Petitioner's sentence, and the Petitioner confirmed that he understood the sentence. The Petitioner affirmed that he was entering the guilty plea voluntarily. The trial court accepted the Petitioner's guilty plea and set the sentencing hearing for February 19, 1999.

### B. Sentencing Hearing

At the Petitioner's sentencing hearing, the parties presented the following evidence: The victim testified that she met the Petitioner through her brother. The victim said that she had a "crush" on the Petitioner when they first met, which eventually led to a dating relationship and the couple "staying together."

The victim testified that, at the time of these events, she lived in a two-story duplex.

2

She and the Petitioner resided in the "upstairs" unit, and her aunt lived in the downstairs unit. After work on June 19, 1998, she went downstairs to visit with her aunt. After about two hours, the Petitioner came to the aunt's unit and said to the victim, "come on now, I'm tired of waiting." The victim said that she believed the Petitioner was referencing sex when he made this statement to her. The victim told the Petitioner to wait but he insisted, and she "went on up the steps in front of him."

The victim recalled that the Petitioner pushed the victim in "the room" and demanded she remove her clothes. The victim refused, and, when the Petitioner persisted, she removed her shirt. The Petitioner pushed the victim onto the bed, and the victim told the Petitioner, "no, no, you can't make me do nothing" and called out for her cousin. The Petitioner grabbed the victim and told her, "you're going to give me some." The victim continued to call for her cousin, and the Petitioner told her to stop "hollering" and began choking the victim. The victim testified that the Petitioner proceeded to bite her hands multiple times with such force that the victim was afraid the Petitioner might break her hand. The Petitioner then threatened to kill the victim. The victim recalled that the Petitioner began to rub his penis against her and then penetrated her vagina while she cried. The Petitioner held the victim's arms during this act. After these events, the victim contacted 911 and went to the hospital for examination. The victim said that she had scratches and bruises "all over" as a result of the Petitioner's conduct.

During the victim's testimony, she became confused, testifying inconsistently, about the course of events of that week. She testified that, on Monday, the Petitioner raped her and would not allow her to leave her apartment, so she did not try to contact police. Tuesday and Wednesday of that same week she and the Petitioner both went to work as usual. The victim testified that, on Thursday, the Petitioner again raped her, and it was after this second incident that she called 911. The victim testified that she was no longer in a relationship with the Petitioner and had not had any contact with the Petitioner since this incident.

On cross-examination, the victim denied that either she or the Petitioner were intoxicated or under the influence of drugs, although she and the Petitioner had each consumed a beer that night. The victim admitted to cocaine use the day before this incident and admitted that, at times, she and the Petitioner argued over her drug use. The victim testified that, prior to this incident, the Petitioner had never been violent toward her. She said that the Petitioner "just snapped." The victim confirmed that the Petitioner had not attempted to contact her from jail.

Clarence Edward Williams, the victim's brother, testified that he had known the Petitioner for five or six years. Williams said that, if the trial court ordered probation, the Petitioner could reside with him. When asked why he would allow the Petitioner to stay with

3

him after the Petitioner committed this crime against Williams' sister, Williams said he did not believe the Petitioner raped the victim. He acknowledged that the victim and the Petitioner argued often, but he maintained that he did not think the Petitioner would rape the victim.

The Petitioner testified that he entered the guilty plea because it was to a lesser-included offense, and he was afraid of being sentenced to serve between fifteen and twenty-two years under the indicted charge. The Petitioner recalled the evening of these events and said that he and the victim argued over the victim's drug use. He acknowledged that they both hit each other and choked each other, but he denied forcing the victim to have sex with him. The Petitioner admitted that he had an "alcohol problem" and several convictions for alcohol-related offenses. The Petitioner said that, if the trial court placed him on probation, he would actively seek treatment for his "alcohol problem." The Petitioner denied attempting any contact with the victim during his nine months of incarceration for this offense.

After hearing the evidence, the trial court sentenced the Petitioner to eight years. The trial court ordered the Petitioner to serve one year from the date of the sentencing hearing at 100% and the remainder of his sentence on community corrections.

On August 7, 2006, the State drafted a letter requesting that the trial court amend the Petitioner's judgment to reflect the requirement of lifetime supervision as required by statute. A copy of an amended judgment form signed by the trial court and prosecutor is part of the record, but it contains no indication of the date on which the judgment was amended. Further, the amended judgment is not stamp-filed by the Clerk of Court or, according to the record, recorded in the Criminal Justice Information System.

## C. Post-Conviction Hearing

On December 30, 2009, the Petitioner filed a petition for post-conviction relief, requesting that the post-conviction court toll the one-year statute of limitations in this case due to the Petitioner's mental incompetence. The Petitioner sought post-conviction relief on the grounds that his guilty plea was not knowingly and voluntarily entered due to the ineffective assistance of counsel, his ignorance of the lifetime supervision consequence, and his mental incompetence, alleging abridgment of constitutional due process requirements.

During the post-conviction hearing, the parties presented the following evidence: Dr. Lauren Catherine Hernbeck, a licensed psychological examiner, testified that she interviewed the Petitioner and tested his intellectual functioning. During her interview with the Petitioner, Dr. Hernbeck asked the Petitioner about his background and childhood. The Petitioner told Dr. Hernbeck that he lived with his mother but a "tall man" used to visit them.

4

Eventually the Petitioner went to live with the "tall man" until his mother wanted him back. The Petitioner did not want to live with his mother and, at some point, he went to live with his grandfather. Dr. Hernbeck noted that the Petitioner had always lived with people, whether in supervised housing or people for whom he worked.

Dr. Hernbeck testified that the Petitioner was placed in "special classes" in kindergarten and later attended "Tennessee Preparatory School[,] where he could learn to work with his hands [at] around age thirteen or fourteen." The Petitioner had maintained several jobs, performing manual labor. Dr. Hernbeck said that the Petitioner relied on friends or employers to take him places. She said that, when she learned the Petitioner could not read or write, she administered an assessment from the National Adult Literacy Council. The assessment confirmed that the Petitioner performed at a first grade reading level. Dr. Hernbeck also tested the Petitioner for "memory malingering" to determine whether the Petitioner was telling the truth. The test indicated that the Petitioner's responses were honest.

Dr. Hernbeck testified that she administered a test to show the Petitioner's intellectual functioning. The test results indicated "mild mental retardation." Dr. Hernbeck used the Wechsler Individual Achievement Test to assess the Petitioner's ability to complete basic school tasks such as spelling or numerical operations. The test results indicated that the Petitioner functioned at the "pre-first grade level" similar to that of a six-year old.

Dr. Hernbeck testified that the Petitioner's history was consistent with the testing results, leading her to conclude that the Petitioner's current level of intellectual functioning had likely been low throughout his life.

Bobby Ray Deal, the Petitioner's employer, testified that he owned Nashville Warehouse Tire Company, a tire and automotive shop. Deal said that he first met the Petitioner in February 2005 through a friend. Deal hired the Petitioner to "keep the shop clean, sweep up and empty trash cans and such." Deal said that, at some point, he tried to teach the Petitioner how to work on cars, but the Petitioner was unable to do most tasks without supervision. Deal said that he converted a break room on the second floor of his business and allowed the Petitioner to live there. The Petitioner made minimum wage, $260.00 a week, half of which Deal sent, on the Petitioner's behalf, for child support. Deal said he gave the remainder of the money to the Petitioner for groceries and personal items. Deal explained that either he or one of his employees went with the Petitioner to help purchase items because the Petitioner was unable to count "change." Deal said that the Petitioner could not read or write, and, in his opinion, was unable to handle his own personal affairs without assistance.

The Petitioner's attorney for these charges ("Counsel") testified that she had worked

5

as a criminal defense attorney for eighteen years. Counsel said that she never had the Petitioner mentally evaluated during the course of her representation. She explained that it never "cross[ed] [her] mind to have him evaluated." Counsel said that, even though the Petitioner could not read or write, she felt that he communicated with her "enough" that she did not feel an evaluation was necessary. Counsel said that "there were times that [she] did have concerns that [the Petitioner] wasn't engaging in sort of the factual analysis that [she] wanted him to," but she had seen such behavior with other clients who did not need mental evaluations.

Counsel testified that, "from the minute" she met the Petitioner, he "insisted" that he had not raped the victim. Counsel recalled that the Petitioner was "focused" on the amount of jail time he could receive should he proceed to trial and risk a conviction by a jury. She stated that the Petitioner could not engage in any analysis regarding the weight of the evidence involved in the case. Counsel said her case notes indicated that she advised the Petitioner to proceed to trial, given the facts in the case, but the Petitioner chose not to do so out of fear of the potential outcome.

Counsel testified that, in 1999 when the Petitioner pled guilty, there was a statutory requirement that he be supervised for life. Counsel said that she did not recall discussing the lifetime supervision requirement with the Petitioner, although it was her practice to advise clients on that issue. Counsel said that she had nothing in her file to indicate whether she had discussed the requirement with the Petitioner. Counsel said that, on the day of the guilty plea submission hearing, she did not recall the Petitioner indicating any lack of understanding about the plea agreement.

On cross-examination, Counsel described the Petitioner as "terrified" of going to prison. She reiterated that the Defendant "would not focus on anything other than the amount of [jail] time . . . he would get if he lost at trial. . . . [H]e would not focus on the different factual nuances of the case at all." Counsel identified the Petitioner's plea petition in this case and agreed that there was no mention of lifetime supervision on the document. Counsel said that she was employed at the Public Defender's office during her representation of the Petitioner and, thereafter, in 2000, entered private practice. Counsel said that she never received any notification from the District Attorney's office seeking to amend the original judgment of conviction. Counsel had the Petitioner's case file from the Public Defender's office with her and confirmed that it did not contain a notice of the amendment to the original judgment.

Based upon this evidence, the post-conviction court issued a memorandum opinion on July 1, 2011, finding that the statute of limitations should be tolled on due process grounds in the Petitioner's case but denying post-conviction relief on the merits. As to the

6

tolling of the statute of limitations, the post-conviction court found that the proof presented concerning the Petitioner's alleged mental incompetence was not sufficient to toll the statute of limitations; however, it did find that the Petitioner qualified for an exception to the statute of limitations as provided in Tennessee Code Annotated section 40-30-102(b)(1). The post-conviction court found that a recent Tennessee Supreme Court case, *Ward v. State*, 315 S.W.3d 461, 476 (Tenn. 2010), established a new constitutional right that warranted retroactive application in the Petitioner's case and tolled the statute of limitations. *Ward* held that trial courts have an affirmative duty to ensure every defendant is made aware of the lifetime community supervision requirement for required offenses prior to acceptance of a guilty plea. *Id.* The post-conviction court found that the Petitioner had shown by clear and convincing evidence that the trial court did not ensure that the Petitioner was aware of the lifetime community supervision consequence of his plea. The post-conviction court, however, denied relief concluding that the error was harmless because there was not sufficient proof that the [P]etitioner would have pled differently had the trial court informed him of the lifetime community supervision requirement.

On July 29, 2011, the Petitioner filed both a notice of appeal and a "motion for a new trial." In his motion for a new trial, the Petitioner asked the post-conviction court to allow the Petitioner to testify in support of his petition for post-conviction relief. The Petitioner asserted that the December 15, 2010 hearing was held for the sole purpose of determining whether the statute of limitations should be tolled in this case and was not a final hearing on the merits of the Petitioner's post-conviction petition. Another hearing was held on August 18, 2011, during which the Petitioner testified.

The Petitioner testified that he was fifty-four years old and lived "upstairs of the tire shop." The Petitioner said that, even though he maintained his innocence, he accepted the State's plea offer because he "figured after the eight years [were] up, it was done and over." The Petitioner said he was afraid of going to jail for twenty years, which was within the sentencing range of the charged offense. The Petitioner said that he was never advised about lifetime supervision and first learned of this requirement after his release from probation eight years after his guilty plea. The Petitioner said he would not have pled guilty had he known of the lifetime supervision requirement because he believed he would serve "eight years and be done and over." The Petitioner said that, once he learned of the lifetime supervision requirement, his employer helped him hire an attorney and file a petition.

On cross-examination, the Petitioner agreed that his primary motivation in entering the guilty plea was to avoid prison time. He further agreed that his sentence, which involved split-confinement, addressed his concerns about a lengthy prison sentence. Despite the fact that the Petitioner received a sentence that involved split-confinement and was less than twenty years, he maintained that he would not have pled guilty to a sentence that included

7

lifetime supervision.

After hearing the Petitioner's testimony, the post-conviction court issued an order dated January 18, 2012, granting the Petitioner post-conviction relief and vacating "the best interest guilty plea to Attempt to Commit Aggravated Rape." In the order, the post-conviction court stated that, based upon the Petitioner's testimony, it could not "find beyond a reasonable doubt that [the Petitioner] would have plead guilty if he knew in doing so the case would never be over." Thereafter, the Petitioner filed a notice of appeal.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court: (1) used an incorrect legal standard when it denied his petition in its July 1, 2011 order; (2) had continuing jurisdiction to enter the January 18, 2012 order granting post-conviction relief; and (3) erred when it determined in the July order that the Petitioner's mental deficiencies were not sufficient to toll the Statute of Limitations in this case. The State responds that: (1) the post conviction court properly found, in its July order, that the trial court's failure to advise the Petitioner of the lifetime supervision element of his sentence was harmless error; (2) the post-conviction court lost jurisdiction to enter the January 18, 2012 order granting post-conviction relief when the Petitioner filed an appeal of the July 1, 2011 order; and (3) the trial court, in its July order, properly determined that the Petitioner was not entitled to a tolling of the statute of limitations due to his mental deficiencies. The State also raises the issue of whether the post-conviction court properly found that *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010), established a new constitutional right that should be applied retroactively. While acknowledging that the Petitioner has raised issues that both parties have addressed, we must first determine which order, the July 1, 2011 order denying relief or the January 18, 2012 order granting relief, is the subject of our review.

## A. Orders

Our initial inquiry is whether the post-conviction court retained jurisdiction over this case after entering an order denying relief on July 1, 2011 and the Petitioner timely filed a notice of appeal of that order. We conclude that the post-conviction court did not thereafter retain jurisdiction and, therefore, the January 18, 2012, order is void.

Our Supreme Court has repeatedly recognized "that post-conviction procedures are not constitutionally required." *Pike v. State*, 164 S.W.3d 257, 262 (Tenn. 2005) (citing *Serrano v. State*, 133 S.W.3d 599, 604 (Tenn. 2004)). The Post-Conviction Procedures Act "is a statutory remedy, and the nature and availability of post-conviction relief lies within the discretion of the legislature." *Id*.

8

The Post-Conviction Procedure Act provides that, "The order granting or denying relief under the provisions of this part shall be deemed a final judgment, and an appeal may be taken to the court of criminal appeals in the manner prescribed by the Tennessee Rules of Appellate Procedure." T.C.A. 40-30-116 (2006). In criminal cases, when a notice of appeal is filed, the jurisdiction of the Court of Criminal Appeals attaches, and the trial court loses jurisdiction. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). Having lost jurisdiction, the trial court has no power to amend its judgment. *Id*. Any judgment made outside the trial court's jurisdiction is void. *State v. Green*, 106 S.W.3d 646, 649 (Tenn. 2003).

The Petitioner filed on July 29, 2011, a notice of appeal and a motion titled "MOTION FOR NEW TRIAL AND/OR FOR FURTHER RELIEF." While maintaining his right of appeal, the Petitioner, in essence, was requesting that the post-conviction court reconsider its July order denying relief. We first note that the Post-Conviction Procedure Act does not provide for the reconsideration by the post-conviction court of its judgment in a post-conviction proceeding.[1] Furthermore, post-judgment motions will not toll the time for filing a notice of appeal under the Post-Conviction Procedures Act. *See Robert Keith Ward v. State*, No. E2011-01835-CCA-R3-PC, 2012 WL 3555312, n.1 (Tenn. Crim. App., at Knoxville, Aug. 20, 2012).

The Petitioner argues that he filed the "MOTION FOR NEW TRIAL AND/OR FOR FURTHER RELIEF," pursuant to Rule 4 of the Tennessee Rules of Appellate Procedure, which provides:

> In a criminal action, if a timely motion or *petition under the Tennessee Rules of Criminal Procedure* is filed in the trial court by the defendant: (1) under Rule 29(c) for a judgment of acquittal; (2) under Rule 32(a) for a suspended sentence; (3) under Rule 32(f) for withdrawal of a plea of guilty; (4) under Rule 33(a) for a new trial; or (5) under Rule 34 for arrest of judgment, the time for appeal for all parties shall run from entry of the order denying a new trial or granting or denying any other such motion or petition.

---

[1]The Post-Conviction Procedure Act expressly governs the commencement of post-conviction actions, the contents of the petition, the method of service, the ability to amend said petitions, and the response by the State. *See, e.g.,* T.C.A. §§ 40-30-103; 40-30-104;40-30-106; 40-30-107; 40-30-114. The Act defines the grounds for relief, defenses available to the State, and the availability, scope and taking of evidence of any hearing. T.C.A. §§ 40-30-102; 40-30-105; 40-30-109; 40-30-110; 40-30-111; 40-30-112. Furthermore, the Act expressly provides for final disposition of petitions and any appeals therefrom, making no reference to application of any additional rules or statutes other than the Tennessee Rules of Appellate Procedure. T.C.A. §§ 40-30-118; 40-30-122.

Tenn. R. App. P. Rule 4(c)(emphasis added). This rule, however, specifically addresses petitions filed under the Tennessee Rules of Criminal Procedure. The Rules of Criminal Procedure do not apply in post-conviction cases unless specifically incorporated by our Supreme Court. T.C.A. § 40-30-118 (2010); Tenn. Sup. Ct. R. 28 § 3.

Accordingly, we conclude that because the post-conviction court was divested of its jurisdiction in this matter upon the Petitioner's filing of the notice of appeal, the January 18, 2012 order is void.

## B. Retroactive Application of *Ward*

Based upon our determination that the January 2012 order is void, we focus our review on the July 1, 2011 order and the post-conviction court's findings as to whether the one-year statute of limitations should be tolled in this case.

A person in custody under a sentence of a court of this state must petition for post-conviction relief within one year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one year of the date on which the judgment becomes final. T.C.A. § 40-30-102(a) (2006). The statute explicitly states, "The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity." *Id*. It further stresses that "[t]ime is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise." *Id*. In the event that a petitioner files a petition for post-conviction relief outside the one-year statute of limitations, the trial court is required to summarily dismiss the petition. T.C.A. § 40-30-106(b) (2006).

Tennessee Code Annotated section 40-30-102(b) sets out three exceptions to the statute of limitations for petitions for post-conviction relief:

No court shall have jurisdiction to consider a petition filed after the expiration of the limitations period unless:

(1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial;

10

(2) The claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the petition must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid.

Additionally, due process concerns may toll the statute of limitations for post-conviction relief. The Tennessee Supreme Court concluded:

[B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.

*Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982)).

The Petitioner pled guilty on January 7, 1999. According to the post-conviction court's July 1, 2011 order, the Petitioner's judgment was amended to include the lifetime supervision requirement "sometime after August 7, 2006," and that the Petitioner became aware of his lifetime community supervision obligation "at least, since January 6, 2007." Almost three years later, on December 30, 2009, the Petitioner filed his petition seeking post-conviction relief.

In seeking post-conviction relief, the Petitioner asserted that the statute of limitations should be tolled due to his "mental incompetence." He argued that the application of the statute of limitations in this case would deny the Petitioner a reasonable opportunity to raise his claim in a meaningful time and manner. After a hearing addressing the issue of the statute of limitations, the post-conviction court made the following findings:

The Court finds that the [P]etitioner made prima facie showing for mental incompetence, but concludes that the [P]etitioner has not satisfactorily established that his mental deficiencies are sufficient to justify the tolling of the statute of limitations. Although acknowledging the evidence that suggests the [P]etitioner has difficulty managing his personal affairs without assistance,

11

the Court notes that the [P]etitioner has been aware of the lifetime community supervision obligations, at least, since January 6, 2007. During that time the [P]etitioner has satisfied the requirements for community supervision and done so without any violations. Under the facts and circumstances surrounding this case, the late filing of [the Petitioner's] December 30, 2009 petition was not justified on the grounds of mental incompetence.

However, the Court does find that the [P]etitioner qualifies for the exception to the statute of limitations as provided in T.C.A. § 40-30-102(b)(1) as it relates to the establishment of a new constitutional right. In Ward v. State, the Tennessee Supreme Court held that trial courts have an affirmative duty to ensure the defendant is made aware of the lifetime community supervision requirement prior to accepting a guilty plea. Ward v. State, 315 S.W.3d 461, 476 (Tenn. 2010). When a trial court fails to ensure that the defendant is aware of the lifetime community supervision requirement, the defendant's plea is deemed involuntary. Id. *Ward* establishes an on-point new rule of criminal law, one that is applicable to the [P]etitioner, and one that was not available to him at the time of his sentencing. The Tennessee Supreme Court decided Ward on July 7, 2010. Consequently, [the Petitioner] would have until July 6, 2011 to file his petition, and he has met that deadline.

The post-conviction court then went on to find that, although the trial court had committed constitutional error by failing to ensure the Petitioner was aware of the lifetime community supervision consequence of his guilty plea, the error was harmless. In reaching this conclusion, the post-conviction court noted that there was no evidence presented indicating that the Petitioner would have pled differently had he known of the lifetime community supervision requirement. Based upon the absence of evidence to the contrary, the post-conviction court stated that it did not "believe the [P]etitioner would have pled differently had the trial court informed him of the lifetime community supervision requirement."

As to the Petitioner's claim of mental incompetence, we conclude that the record supports the post-conviction court's findings. We also agree with the post-conviction court's denial of relief based upon *Ward*, however, we reach this result based upon different reasoning. The defendant in *Ward* filed a petition for post-conviction relief, alleging, among other things, that his guilty plea was not knowing and voluntary because the trial court failed to advise him of the lifetime community supervision requirement. Our Supreme Court held that, "[b]ecause the mandatory lifetime supervision requirement is an additional part of a defendant's sentence, the trial court is constitutionally required to inform the defendant of the supervision requirement as part of the plea colloquy." *Ward*, 315 S.W.3d at 474. The *Ward* court did not address the retroactivity of this holding. A recent panel of our Court,

12

however, did address the issue in *Derrick Brandon Bush v. State of Tennessee*, No. M2011-02133-CCA-R3-PC, 2012 WL 2308280 (Tenn. Crim. App., at Nashville, June 15, 2012), *Tenn. R. App. P. 11 pending.* As to the question of the retroactivity of *Ward,* a panel of this Court held:

> In sum, we hold that *Ward* announced a new rule, but that new rule is not applicable retroactively in post-conviction proceedings. . . . [T]he new rule announced in *Ward* is not a watershed rule of criminal procedure, nor does it materially enhance the integrity and reliability of the plea process near the degree necessary to require retroactive application.

*Id*. at *9. While this case is an unpublished opinion, we agree with its reasoning in concluding that *Ward* should not be applied retroactively in post-conviction proceedings. As such, the post-conviction court's finding that *Ward* should be applied retroactively to allow the tolling of the statute of limitations in this case was in error.

## C. Remaining Issues

Based upon our decision that there are no circumstances requiring the tolling of the statute of limitations in this case resulting in the dismissal of the petition, we do not reach the remaining issues raised by the Petitioner.

## III. Conclusion

Based upon the foregoing reasoning and authorities, we reverse the trial court's January 18, 2012 order granting the Petitioner post-conviction relief as void and dismiss the Petitioner's petition seeking post-conviction relief for failure to file within the applicable statute of limitations period for post-conviction petitions.

_____
ROBERT W. WEDEMEYER

13