# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 7, 2012 Session

## TIMMY DALE BRITT v. DYER'S EMPLOYMENT AGENCY, INC. ET AL

**Appeal by Permission from the Special Workers' Compensation Appeals Panel
Circuit Court for Decatur County
No. 09CV63      C. Creed McGinley, Judge**

---

**No. W2011-00929-SC-WCM-WC – Filed January 22, 2013**

---

The employer, a temporary staffing agency, assigned the employee to work temporarily at a manufacturing facility. The employee sustained a compensable work-related injury three weeks into the assignment and reported the injury to the employer. At about the same time, the manufacturing facility notified the employer that employee's assignment had ended. Consistent with its business practice, the employer terminated the employee's employment and did not return the employee to work after the injury. The employee sought workers' compensation benefits. The trial court awarded benefits; however, citing the temporary nature of the employment, the trial court applied the statute capping the award at one and one-half times the medical impairment rating. See Tenn. Code Ann. § 50-6-241(d)(1)(A) (2008 & Supp. 2012). The Special Workers' Compensation Appeals Panel vacated the judgment of the trial court and remanded for a determination of whether the employee had a meaningful return to work. We hold that because the employer neither returned the employee to work after his injury, nor offered him an opportunity to return to work, nor terminated his employment for misconduct, the award of benefits is governed by the statute authorizing benefits up to six times the medical impairment rating, see id. § 50-6-241(d)(2)(A), not by the statute capping benefits at one and one-half times the medical impairment rating, see id. § 50-6-241(d)(1)(A). The judgments of the Special Workers' Compensation Appeals Panel and trial court are vacated, and this case is remanded to the trial court for proceedings consistent with this decision.

**Tenn. Code Ann. § 50-6-225(e)(6) (2008 & Supp. 2012); Judgments of the Special Workers' Compensation Appeals Panel and Trial Court Vacated; Case Remanded to the Trial Court**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined. JANICE M. HOLDER, J., not participating.

Molly Glover and Jeffrey E. Nicoson, Memphis, Tennessee, for the appellants, Dyer's Employment Agency, Inc. and United States Fidelity and Guaranty Company.

Jay E. DeGroot, Jackson, Tennessee, for the appellee, Timmy Dale Britt.


**OPINION**

**Factual and Procedural History**

Dyer's Employment Agency ("Dyer's") is a temporary staffing agency in Lexington, Tennessee which provides temporary employees to manufacturing facilities. Dyer's does not make permanent placements, and personnel assigned to work temporarily in manufacturing facilities remain employees of Dyer's.

On September 9, 2008, Dyer's hired and assigned Timmy Dale Britt to work at Mark IV, a manufacturer of automobile hoses. Mr. Britt's job at Mark IV required intensive, repetitive gripping and pulling with both hands. After working at Mark IV for approximately three weeks, Mr. Britt began experiencing numbness and pain in his right hand.[1] Mr. Britt timely reported this injury to Dyer's and was treated by a general practitioner, who eventually referred him for further treatment to Dr. Michael Calfee, an orthopaedic surgeon.

After examining Mr. Britt on October 22, 2008, Dr. Calfee ordered nerve conduction studies, which revealed severe carpal tunnel syndrome in Mr. Britt's right arm. Dr. Calfee recommended carpal tunnel release surgery. Mr. Britt consented, and Dr. Calfee performed the surgery on January 9, 2009. Mr. Britt attained maximum medical improvement on April 1, 2009, and Dr. Calfee released him to return to work with no restrictions on that date. Dr. Calfee assigned a 4% permanent medical impairment rating to Mr. Britt's right arm based on the severity of Mr. Britt's carpal tunnel syndrome and the residual symptoms of the corrective surgery.

---

[1] Mr. Britt also complained of pain in his right neck and shoulder, but the trial court found that Mr. Britt failed to prove a compensable work-related injury to his neck. Mr. Britt has not challenged this finding on appeal.

Mr. Britt did not return to work for Dyer's following his injury. On September 23, 2008, approximately the same time Mr. Britt reported his injury, Mark IV advised Dyer's that Mr. Britt's assignment had ended. Consistent with its business practice, Dyer's terminated Mr. Britt's employment. During her testimony at trial, Ms. Tara Morris, "HR Account Executive" for Dyer's, explained:

> When the [temporary] assignment ends their position with us also ends. They're given a separation notice. They have to come in and reapply to be considered for another position. So any time an assignment ends[,] employment with Dyer['s] is ended also and it states that in our paperwork.

Ms. Morris was also asked if, once a worker's temporary assignment ends, "[i]t's as if they have not worked for you at all?" She replied, "It's as if they had not worked – right. Yes." Ms. Morris further testified that Dyer's informs job applicants that all assignments are temporary and that job applications with Dyer's are "only good for thirty days" and that "[a]fter thirty days[,] applications are generally shredded." Ms. Morris testified that job applicants are aware of the thirty-day rule and realize that, "if they want a job they're going to have to have a current app[lication]."

Ms. Morris testified that Mr. Britt submitted an application to Dyer's after his employment was terminated and that Dyer's retained his application for thirty days, but was unable to place him in a temporary position. Mr. Britt's application lapsed at the end of thirty days, consistent with Dyer's business practice, and he did not submit another application. Dyer's did not subsequently offer Mr. Britt employment, and he did not return to work for Dyer's after his injury.

Mr. Britt testified that he worked after the surgery, first as a truck driver for a trucking firm for which he had previously worked, and at the time of trial on November 4, 2010, as a security guard at Milan Arsenal,[2] a manufacturer of ammunition. Mr. Britt, age forty-four, had graduated from high school and held a commercial driver's license. He had previous experience working as a truck driver, factory worker, welder, and correctional officer, as well as ten years experience owning and operating a sawmill.

Concerning his injury, Mr. Britt testified that although his right arm had improved since surgery, he still experiences occasional numbness and pain, which is more severe on cold or rainy days. Mr. Britt said his hand becomes painful when he drives or uses a hammer and that he "drops things" more frequently and uses his left hand more to do his work.

---

[2] Milan Arsenal was also referred to at trial as American Ordnance.

The trial court found that Mr. Britt sustained a compensable injury to his right arm, and the trial court adopted the 4% medical impairment rating assigned by Dr. Calfee. The trial court applied the statutory multiplier limiting Mr. Britt's award of benefits to one and one-half times the medical impairment rating, see Tenn. Code Ann. § 50-6-241(d)(1)(A), rather than the statutory multiplier permitting an award of benefits up to six times the medical impairment rating. See id. § 50-6-241(d)(2)(A). The trial court recognized that the lower multiplier ordinarily applies only if an employer has returned an injured employee to work at a wage equal to or greater than the wage the employee was earning at the time of the injury. However, in its oral ruling from the bench, the trial court found that Dyer's could not "be faulted" for Mark IV having "ended" Mr. Britt's "assignment." The trial court also considered the inherently temporary nature of Mr. Britt's employment with Dyer's and the fact that Mr. Britt had been advised of the temporary nature of his employment before he accepted the Mark IV assignment. In light of these circumstances, the trial court applied the lesser statutory multiplier and awarded Mr. Britt 6% permanent partial disability benefits to his right arm.

Mr. Britt filed a motion to alter or amend the judgment, asserting that the trial court should have applied the greater multiplier because he did not have a meaningful return to work. The trial court expressed "sympath[y]" for Mr. Britt, stated that "the award was not proportional to the injury," and described the award as "inadequate." Nonetheless, the trial court denied the motion, commenting that the law required application of the lesser multiplier. The Special Workers' Compensation Appeals Panel vacated the judgment of the trial court and remanded for a determination of whether Mr. Britt had a meaningful return to work. We granted Mr. Britt's motion for review to determine which statutory multiplier applies when a temporary staffing agency does not return a temporary employee to work after the employee sustains a compensable injury.

**Standard of Review**

In workers' compensation appeals, a trial court's findings of fact are reviewed "de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding[s], unless the preponderance of evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2) (2008 & Supp. 2012). A trial court's conclusions of law are reviewed de novo upon the record with no presumption of correctness. Seiber v. Reeves Logging, 284 S.W.3d 294, 298 (Tenn. 2009). De novo review applies as well to the issue of statutory construction presented in this appeal. Mills v. Fulmarque, Inc., 360 S.W.3d 362, 366 (Tenn. 2012).

**Analysis**

The familiar rules of statutory construction also guide our resolution of the issue on appeal. See Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 526-28 (Tenn. 2010). Our role in construing statutes is to determine and effectuate legislative intent and purpose. Id. at 526; In re Estate of Tanner, 295 S.W.3d 610, 613 (Tenn. 2009). To fulfill this role, we focus on the text of the statute and give the words their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. See Lee Med., Inc., 312 S.W.3d at 526; Hayes v. Gibson Cnty., 288 S.W.3d 334, 337 (Tenn. 2009); Waldschmidt v. Reassure Am. Life Ins. Co., 271 S.W.3d 173, 176 (Tenn. 2008). When statutory language is clear and unambiguous, courts look no further to ascertain the statute's meaning. See Lee Med., Inc., 312 S.W.3d at 527; Green v. Green, 293 S.W.3d 493, 507 (Tenn. 2009). Courts may neither alter or amend statutes nor substitute our own policy judgments for those of the General Assembly. See Gleaves v. Checker Cab Transit Corp., Inc., 15 S.W.3d 799, 802-03 (Tenn. 2000).

In 1992, the General Assembly enacted the first statutes imposing multiplier caps on workers' compensation benefits. See Williamson v. Baptist Hosp. of Cocke Cnty., Inc., 361 S.W.3d 483, 487-88 (Tenn. 2012) (discussing the history of the workers' compensation laws in Tennessee). The multiplier statutes at issue in this appeal provide:

> For injuries occurring on or after July 1, 2004, in cases in which an injured employee is eligible to receive any permanent partial disability benefits either for body as a whole or for schedule member injuries, . . . and the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury, the maximum permanent partial disability benefits that the employee may receive is one and one half (1½) times the medical impairment rating determined pursuant to the provisions of § 50-6-204(d)(3).
>
> . . . .
>
> For injuries arising on or after July 1, 2004, in cases in which the pre-injury employer did not return the injured employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury, the maximum permanent partial disability benefits that the employee may receive for body as a whole and schedule

member injuries subject to subdivision (d)(1)(A) may not exceed six (6) times the medical impairment rating determined pursuant to the provisions of § 50-6-204(d)(3).

Tenn. Code Ann. § 50-6-241(d)(1)(A), (2)(A) (emphasis added). These statutes

protect the interests of several categories of employees, including (1) those who are unable to return to work for their employer because of the effects of their work injuries, (2) those who are able to return, but at a lesser wage because of the effects of their work injuries, and (3) those who, for reasons outside their control, are placed into the job market to compete against unimpaired applicants.

Robinson v. Bridgestone Americas Tire Operations, LLC, No. M2011-02238-WC-R3-WC, 2012 WL 5877497, at *4 (Tenn. Workers' Comp. Panel Nov. 21, 2012). These statutes encourage the retention of injured employees by reducing the liability of employers who return injured employees to work at the same or a greater wage. See Williamson, 361 S.W.3d at 490. In turn, encouraging the retention of injured workers advances the general purpose of the workers' compensation statutes, which "is to relieve society of the burden of providing compensation to injured workers and to put that burden on the industry employing the worker." Lynch v. City of Jellico, 205 S.W.3d 384, 390 (Tenn. 2006).

In deciding which multiplier applies, courts must determine whether "the pre-injury employer" did or did not "return the injured employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury[.]" Tenn. Code Ann. § 50-6-241(d)(1)(A), (2)(A). The evidence in this case indisputably establishes that Dyer's did not return Mr. Britt to work at all. While it is true, as the trial court concluded, that Dyer's cannot be "faulted" for Mark IV's decision to end Mr. Britt's temporary assignment, this is not a relevant consideration under the plain language of the multiplier statutes. The relevant inquiry is whether the pre-injury employer returned the injured employee to work at a wage equal to or greater than the pre-injury wage.

In applying the lesser multiplier, the trial court also cited the inherently temporary nature of Mr. Britt's employment with Dyer's and Mr. Britt's knowledge of the nature of his employment with Mark IV. These facts, although supported by the record, are not relevant to the determination of which multiplier applies. This is true because the statutory language neither draws a distinction between permanent and temporary employees nor permits or requires consideration of the employer's business practices. We may not alter or amend the statutory language, which focuses only on whether the employer returned the employee to

-6-

work at a wage equal to or greater than the pre-injury wage, or create a judicial exception to the clear statutory language for temporary employers and employees.

Nor does the concept of "meaningful return to work" apply in this appeal, although the parties focused on this concept in the courts below. The concept of "meaningful return to work" developed in response to the multiplier caps because the workers' compensation statutes failed to address "the common circumstance in which an employee who becomes permanently, partially disabled as the result of a workplace injury returns to work for the pre-injury employer but does not remain employed." Tryon v. Saturn Corp., 254 S.W.3d 321, 328 (Tenn. 2008). Employers asked courts to apply the lesser multiplier if employees had returned to work for *any* period of time, while employees who had returned to work but were unable to continue working argued for application of the greater multiplier. Id. Courts resolved this issue by focusing on whether an injured employee had a meaningful return to work. Id. If so, courts applied the lesser multiplier; if not, the greater multiplier applied. Id.

As this Court has explained, determining whether a particular employee had a meaningful return to work requires an assessment of "the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to either return to or remain at work." Id. As this Court noted in Tryon, "[t]he circumstances to which the concept of 'meaningful return to work' must be applied are remarkably varied and complex." Id. Nonetheless, all of the prior meaningful-return-to-work cases have involved situations in which an employee (1) actually returned to work for the pre-injury employer but later resigned or retired; (2) was laid off or fired for misconduct by the pre-injury employer before returning to work; or (3) failed to return to work even though offered a position by the pre-injury employer. See Tryon, 254 S.W.3d at 328-30 (discussing the meaningful-return-to-work cases); Carter v. First Source Furniture Grp., 92 S.W.3d 367, 372 (Tenn. 2002) (holding that an employer who fires an employee for misconduct prior to treatment of a work-related injury is not required to make a post-treatment offer of re-employment to gain the benefit of the lower statutory cap); Durham v. Cracker Barrel Old Country Store, Inc., No. E2008-00708-WC-R3-WC, 2009 WL 29896 (Tenn. Workers' Comp. Panel Jan. 5, 2009) (discussing Carter and holding that the greater statutory cap may be applied where an employee has purportedly been fired for misconduct if a trial court determines that the employee was actually terminated as a result of the injury).

Unlike these prior cases, Dyer's neither returned Mr. Britt to work after his injury, nor offered him an opportunity to return to work, nor terminated his employment for misconduct. Instead, consistent with its business practice, Dyer's terminated Mr. Britt's employment after Mark IV advised him that his assignment had ended. This action occurred near in time to Mr. Britt's report of his work-related injury. Dyer's did not thereafter offer to return Mr. Britt to work in any other capacity. In the context of this case, where it is undisputed that Mr.

Britt was not fired for misconduct and Dyer's neither returned Mr. Britt to work nor offered him an opportunity to return to work, the concept of meaningful return to work has no application.

Accordingly, because Dyer's failed to return Mr. Britt to work after his injury at a wage equal to or greater than the pre-injury wage, the trial court erred by concluding that Mr. Britt's award of benefits is capped at one and one-half times the medical impairment rating. Rather, the greater statutory multiplier cap applies, meaning Mr. Britt's award of benefits may not exceed six times the medical impairment rating.

Given our conclusion that the greater multiplier applies, a remand to the trial court is appropriate because the trial court described the award of 6% as "inadequate" and "not proportional to the injury." Having observed Mr. Britt's testimony, the trial court is better suited than this Court to determine an appropriate award of permanent partial disability benefits within the parameters of the applicable statutory multiplier cap.[3]

## Conclusion

Because Mr. Britt did not return to work for Dyer's at all after his injury, the greater statutory multiplier applies, meaning his award of benefits may not exceed six times the medical impairment rating. This matter is remanded to the trial court to determine the disability benefits that Mr. Britt is entitled to receive. Costs of this appeal are taxed to Dyer's Employment Agency, and its surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE

---

[3] We reiterate that trial courts in workers' compensation cases should make alternative findings so as to facilitate appellate review and avoid the delay occasioned by remands. See Gerdau Ameristeel, Inc. v. Ratliff, 368 S.W.3d 503, 509 (Tenn. 2012); Barron v. Tenn. Dep't of Human Servs., 184 S.W.3d 219, 223 n. 1 (Tenn. 2006).