# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 6, 2014 Session

# CHA YANG v. NISSAN NORTH AMERICA, INC. ET AL.

**Appeal by Permission from the Special Workers' Compensation Appeals Panel**
**Circuit Court for Rutherford County**
**Nos. 58227, 58921     J. Mark Rogers, Judge**

---

### No. M2012-01196-SC-WCM-WC - Filed August 11, 2014

---

The employee suffered bilateral shoulder injuries in January and March of 2008. After undergoing separate surgeries on each shoulder, the employee agreed to a voluntary buyout of his employment. Later, he filed suit for workers' compensation benefits. The trial court awarded temporary total disability benefits and assessed a 90% permanent partial disability award after determining that the employee's permanent partial disability benefits were not capped at one and one-half times the impairment rating. The employer appealed and, pursuant to Tennessee Supreme Court Rule 51, the case was referred to a Special Workers' Compensation Appeals Panel. The Panel ruled that the employee's benefits should have been capped at one and one-half times his impairment rating and reduced the award of permanent partial disability benefits to 37.5%. We granted the employee's motion for full Court review and have determined that because the employee acted reasonably by accepting the voluntary buyout for reasons related to his work injuries, the award for permanent partial disability is not subject to the one-and-one-half-times cap. The judgment of the Panel is, therefore, modified to the extent that the trial court's award for permanent partial disability benefits is reinstated, but otherwise affirmed.

**Tenn. Code Ann. § 50-6-225(e)(6) (2008 & Supp. 2013); Judgment of the Special Workers' Compensation Appeals Panel Affirmed as Modified**

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined. WILLIAM C. KOCH, JR., J., not participating.

R. Steven Waldron (at trial and on appeal) and Terry A. Fann and Benjamin L. Parsley, III (at trial), Murfreesboro, Tennessee, for the appellant, Cha Yang.

Randolph A. Veazey and Janis O. Mize, Nashville, Tennessee, for the appellees, Nissan North America, Inc. and Ace American Insurance Company.

# OPINION
## I. Facts and Procedural History

Cha Yang (the "Employee") began working as a production technician for Nissan North America, Inc. (the "Employer") in February of 2004. In 2007 and 2008, he installed sun roofs and weather stripping on the vehicles manufactured by the Employer. On January 16, 2008, the Employee suffered a job-related injury to his left shoulder which required medical treatment. He was assigned to light duty. On March 4, 2008, the Employee suffered an injury to his right shoulder but continued his light-duty work until March 12, 2008. On the following day, he underwent surgery on his left shoulder and, three months later, underwent surgery on his right shoulder. On August 1, 2008, the Employer offered a Voluntary Transition Program ("VTP"), commonly known as a "buyout," to all of its manufacturing technicians. On August 26, 2008, the Employee resigned his employment in exchange for $100,000 and health insurance coverage for one year. His net "incentive payment" of approximately $68,000 was paid in December.

In December of 2008 and April of 2009, the Employee filed two separate suits for workers' compensation benefits, seeking recovery for his shoulder injuries and also claiming a mental injury related to his physical injuries. The trial court consolidated the two cases for trial. The Employee and the Employer submitted a list of stipulated facts, agreeing that the Employee sustained a 12% impairment to the body as a whole as a result of his shoulder injuries. The Employer disputed the claim of compensability for any mental injury. The extent of the Employee's vocational disability and the amount of benefits that should be awarded in the event of a finding of permanent and partial disability were also in dispute. Much of the medical testimony was submitted by deposition, although two vocational experts testified at trial.

The Employee, who was born in Laos and became a United States citizen in 2006, testified that he enjoyed working for the Employer and would have continued to work there for as long as he was physically able. He described how he had earned the respect of his co-workers and supervisors by his efforts, offering to assist other employees and working overtime whenever necessary. He testified that he injured his left shoulder while "working with the weather strips" as he shot a bolt into a car. Dr. Timothy J. Steinagle, an orthopaedic surgeon, treated his left shoulder beginning in February of 2008. When the Employee returned to work, he was assigned to light duty, which required him to sweep the floors and monitor a robotic train that delivered vehicle parts along the manufacturing line. He injured his right shoulder when the train went off its track and he had to "drag" and "jerk" it back into place. When his supervisor loudly demanded that he "keep the line moving," the Employee, in his own words, "broke down." He testified that "everything changed" after his shoulder injuries, and he was fearful of losing his job.

The Employee, while continuing to experience pain in both shoulders, described his recovery after his left shoulder surgery as "going well." After his subsequent right shoulder surgery, however, he felt continuous pain in both shoulders, which resulted in loss of sleep, irritability, anxiety, and depression. He reported his symptoms to Dr. Steinagle and consulted a licensed clinical social worker, Doyle Kermicle, who referred the Employee to his primary care physician, Dr. David Hopkins.

After consultation with his wife, Youa Yang, the Employee signed the VTP offered by the Employer. At trial, the Employee explained that he accepted the VTP because he "knew [he] couldn't go back [to work] after [his] surgery" as the result of constant pain in both shoulders, depression, and frequent anxiety attacks. He testified that he knew he would not be able to perform his assignments on either regular or light duty. He described his injury while on light duty and his lack of progress in recovery as significant factors in his decision to accept the VTP.

After accepting the VTP, the Employee sought treatment from Dr. Jeffrey E. Hazelwood for pain management. He also continued under the care and treatment of Dr. Steinagle and Dr. Hopkins. In late November of 2008, he was restricted to "[o]ccasional use of his left arm, no working above shoulder, no working with outstretched arm, no working overhead, . . . lifting limit ten pounds." According to Dr. Steinagle, the Employee reached maximum medical improvement on December 23, 2008, and was released without any permanent restrictions. Dr. Hazelwood found that the Employee reached maximum medical improvement on January 7, 2009.

The Employee testified that since his first injury on January 16, 2008, the pain associated with his shoulder injuries prevented him from performing his duties for the Employer at any time. He further testified that he had applied for several jobs after accepting the VTP but never received an offer of employment from the Employer or any other company. He added that he did not know of any company that could employ him because his diabetic condition required several trips to the restroom per hour.

Youa Yang corroborated much of the Employee's testimony. She explained that the Employee had originally decided to reject the VTP but ultimately accepted the offer because of "panic attacks," the pain, and the diagnosis of "depression." She explained that in light of his overall condition, "we knew he could not go back to work [for the Employer]." Ms. Yang also provided details as to the extent of the Employee's depression after he accepted the VTP, confirming that throughout 2008 and into 2009 the Employee's "pain was constant" and without any improvement. She recalled that in 2010 the Employee "started getting worse" and threatened to commit suicide in 2011 before a brief period of hospitalization.

Two former co-workers also testified on behalf of the Employee. Timothy Brawner and Jimmy Wilson, who had worked closely with the Employee for several years, described his personality prior to his shoulder injuries as "fun," "outgoing," and "happy," stating that he would "do anything for you." They further described in detail the fast pace and the strenuous physical demands of their jobs. Brawner and Wilson also sustained work-related injuries and accepted the VTP offered in 2008. Brawner, who suffered a shoulder injury similar to that of the Employee, explained that he accepted the VTP after injuring his back because he "just didn't feel like [he] could do [his job]." Wilson testified that he accepted the VTP "because [he] had so many injuries"—two torn rotator cuffs, two torn elbow nerves, carpal tunnel syndrome in both hands, a herniated disc in his neck, and a bulging disc in his lower back. According to Wilson, several of his physicians suggested that he accept the VTP but "wouldn't write it because they [were] workers' comp doctors." Wilson also witnessed the incident in March of 2008 when the Employee was berated by his supervisor for his inability to adequately perform his light-duty responsibilities and "broke down." He described the Employee's reaction as a panic attack—shaking, nervous, and crying.

The trial court found that, prior to his bilateral shoulder injuries, the Employee "enjoyed an excellent relationship with his employer," had an "outstanding work record," and "was a good and excellent employee." The trial court described the testimony of Brawner and Wilson as "very credible," "unrefuted," and "significant," and also accredited the testimony of the Employee and his wife, finding that they had made a "reasonable decision" to accept the VTP. Based on this evidence, the trial court ruled that the Employee "did not have a meaningful return to work at any point in time following [the] surgery performed on his left shoulder on March 13, 2008," and, therefore, his permanent partial disability benefits were not capped at one and one-half times his impairment rating. The trial court further ruled that the Employee presented a compensable claim for his mental injury and that the Employer was obligated to pay lifetime medical benefits to the Employee for his physical and mental injuries. In addition to the award of 90% permanent partial disability benefits, which was calculated upon a combined impairment rating of 25% for the physical and mental injuries, the trial court also awarded temporary total disability benefits, long-term disability benefits, vocational benefits, attorney's fees, and discretionary costs.

The Employer filed a notice of appeal to this Court on June 5, 2012, and the case was referred to a Special Workers' Compensation Appeals Panel. See Tenn. Code Ann. § 50-6-225(e)(1), (3) (2008 & Supp. 2013); Tenn. Sup. Ct. R. 51. The Panel affirmed the judgment of the trial court in all respects, except as to the award of 90% permanent partial disability benefits, modifying this award to 37.5% as capped at one and one-half times the impairment rating. See Tenn. Code Ann. § 50-6-241(d)(1)(A) (2008 & Supp. 2013). The Panel held that the Employee's decision to accept the VTP in August of 2008 was not "reasonable" for purposes of the statutory cap "because he made his decision before his healthcare providers

had determined whether he would be able to return to work and before [the Employer] had been afforded the opportunity to determine whether it would be able to offer [to return him to work]." Yang v. Nissan N. Am., Inc., No. M2012-01196-WC-R3-WC, slip op. at 9 (Tenn. Workers' Comp. Panel mailed Apr. 29, 2013).

We granted the Employee's motion for full Court review, see Tenn. Code Ann. § 50-6-225(e)(5)(A)(ii)*(b)*, (e)(6), to determine whether the one-and-one-half-times cap described in Tennessee Code Annotated section 50-6-241(d)(1)(A) applies in these circumstances. In our view, the Special Workers' Compensation Appeals Panel satisfactorily addressed and rejected the Employer's claims as to the remaining issues: (1) the compensability of the Employee's mental injury; and (2) the awards of temporary total disability benefits, medical expenses, and discretionary costs. See Yang, No. M2012-01196-WC-R3-WC, slip op. at 5-6, 9-11.

## II. Standard of Review

A trial court's findings of fact in a workers' compensation case are reviewed de novo accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2); see also Tenn. R. App. P. 13(d). "'This standard of review requires us to examine, in depth, a trial court's factual findings and conclusions.'" Williamson v. Baptist Hosp. of Cocke Cnty., Inc., 361 S.W.3d 483, 487 (Tenn. 2012) (quoting Galloway v. Memphis Drum Serv., 822 S.W.2d 584, 586 (Tenn. 1991)). When the trial court has seen and heard the witnesses, considerable deference must be afforded to the trial court's findings of credibility and the weight that it assessed to those witnesses' testimony. Tryon v. Saturn Corp., 254 S.W.3d 321, 327 (Tenn. 2008) (citing Whirlpool Corp. v. Nakhoneinh, 69 S.W.3d 164, 167 (Tenn. 2002)). "When the issues involve expert medical testimony that is contained in the record by deposition, determination of the weight and credibility of the evidence necessarily must be drawn from the contents of the depositions, and the reviewing court may draw its own conclusions with regard to those issues." Foreman v. Automatic Sys., Inc., 272 S.W.3d 560, 571 (Tenn. 2008) (citing Orrick v. Bestway Trucking, Inc., 184 S.W.3d 211, 216 (Tenn. 2006)). On questions of law, our standard of review is de novo with no presumption of correctness. Wilhelm v. Krogers, 235 S.W.3d 122, 126 (Tenn. 2007) (citing Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003)).

## III. Analysis

In this appeal, the Employee contends that the trial court did not err by awarding 90% permanent partial disability benefits based upon its finding that the Employee's decision to accept the VTP was reasonably related to his bilateral shoulder injuries and accompanying mental injuries. The Employer, on the other hand, contends that the Special Workers' Compensation Appeals Panel properly reduced the award of permanent partial disability

-5-

benefits because the Employee did not act reasonably when he accepted the VTP prior to reaching maximum medical improvement and before the Employer had an opportunity to offer to return the Employee to work after his injuries. The determinative issue, in its most basic form, is whether the award of permanent partial disability benefits should have been capped at one and one-half times the 25% impairment rating.

The statutory cap at issue in this case is set forth in Tennessee Code Annotated section 50-6-241, which provides:

> For injuries occurring on or after July 1, 2004, in cases in which an injured employee is eligible to receive any permanent partial disability benefits either for body as a whole or for schedule member injuries, . . . and the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury, the maximum permanent partial disability benefits that the employee may receive is one and one half (1½) times the medical impairment rating . . . .
>
> . . . .
>
> For injuries arising on or after July 1, 2004, in cases in which the pre-injury employer did not return the injured employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury, the maximum permanent partial disability benefits that the employee may receive for body as a whole and schedule member injuries subject to subdivision (d)(1)(A) may not exceed six (6) times the medical impairment rating . . . .

Tenn. Code Ann. § 50-6-241(d)(1)(A), (2)(A) (emphasis added). Under the plain language of this statute, the relevant inquiry in determining which multiplier applies—either one and one-half times the impairment rating or up to six times the impairment rating—"is whether the pre-injury employer returned the injured employee to work at a wage equal to or greater than the pre-injury wage." Britt v. Dyer's Emp't Agency, Inc., 396 S.W.3d 519, 524 (Tenn. 2013).[1] In order for the lower statutory cap to apply, "the burden is upon the employer to

---

[1] After the completion of briefing but prior to oral argument in this case, the Employee submitted our decision in Britt as supplemental authority to support his contention that because he did not return to work for the Employer at all after his first shoulder surgery, his permanent partial disability benefits cannot be capped. The circumstances in Britt, however, which involved the unique situation of a temporary staffing agency, are not analogous to the unique situation in this

(continued...)

show, by a preponderance of the evidence, that an offer of a return to work is [made] at a wage equal to or greater than the pre-injury employment and that the work is within the medical restrictions . . . for the returning employee." Ogren v. Housecall Health Care, Inc., 101 S.W.3d 55, 57 (Tenn. Workers' Comp. Panel 1998).

In prior cases, we have recognized the concept of a "meaningful return to work" in order to guide the application of the appropriate statutory cap when "an employee who becomes permanently, partially disabled as the result of a workplace injury returns to work for the pre-injury employer but does not remain employed." Tryon, 254 S.W.3d at 328. The inquiry of whether an employee has had a "meaningful return to work" depends upon "the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to either return to or remain at work." Id. If an employee voluntarily resigns or retires from a pre-injury employer based upon a reasonable and substantiated belief that he or she will be unable to perform the job required upon return to the workplace, the employee has acted reasonably for purposes of the statutory caps. Compare Williamson, 361 S.W.3d at 489-90 (applying lower cap because employee quit after two weeks at his new job and his "doubts, fears, and anxiety [about his ability to perform], while genuine, were unfounded"), with Howell v. Nissan N. Am., Inc., 346 S.W.3d 467, 473 (Tenn. 2011) (applying higher cap because at the time employee declined to return to work, "the anxiety [she] felt about being transferred to [her new job] was not unfounded, but was founded on her prior experience at work, her personal knowledge of the work conditions, and her physical abilities and limitations"). Ultimately, then, the touchstone of the meaningful-return-to-work analysis is "reasonableness," which is a highly fact-intensive inquiry that will depend upon the circumstances in each case. Tryon, 254 S.W.3d at 328.

Here, the trial court specifically found that the Employee "did not have a meaningful return to work at any point in time following [the] surgery performed on his left shoulder on March 13, 2008." The trial court also found "no proof in the record to indicate that the [E]mployer did anything further toward returning [the Employee] to the workplace except to make to him a buyout offer with the [looming] expiration date of September 12, 2008." Noting that it had followed the fact-intensive inquiry required by Tryon, the trial court concluded that the decision of the Employee to accept the VTP "was a reasonable decision, and therefore he is not barred or capped at the [one-and-one-half-times] multiplier." In support of this conclusion, the trial court reiterated its finding that the Employee was a

[1](...continued)
case—a voluntary buyout offered in exchange for an employee's resignation. Moreover, the Employee did briefly return to work for the Employer in a light-duty role after his first workplace injury. Our analysis, therefore, focuses on whether the Employee had a "meaningful return to work," as discussed by the trial court and the Special Workers' Compensation Appeals Panel.

credible witness who testified that he had accepted the VTP because his recovery "wasn't progressing," he did not know if his medical condition would improve, and he believed he "couldn't go back" to work after his shoulder surgeries.

The Special Workers' Compensation Appeals Panel began its analysis with the observation that "[o]rdinarily, an employee's voluntary decision either to decline to return to work for or to resign or retire from his or her pre-injury employer for reasons unrelated to the work itself prevents the employee from claiming that he or she could not or did not have a meaningful return to work." Yang, No. M2012-01196-WC-R3-WC, slip op. at 8 (emphasis added); see also Tenn. Code Ann. § 50-6-241(d)(1)(B)(iii)*(a)* (providing that an employee who retires or resigns for reasons unrelated to a workplace injury cannot seek reconsideration of permanent partial disability benefits). The Panel pointed out that the Employee accepted the VTP prior to reaching maximum medical improvement, while receiving active treatment for his physical injuries, and at a time when his anxiety and depression had only recently manifested and he did not know the outcome of his treatment. Under these circumstances, the Panel concluded that

> [the Employee's] decision to voluntarily resign from [the Employer] was not "reasonable" for the purpose of [Tennessee Code Annotated section] 50-6-241(d)(1)(A) because he made his decision before his healthcare providers had determined whether he would be able to return to work and before [the Employer] had been afforded the opportunity to determine whether it would be able to offer [the Employee] employment consistent with the restrictions placed on him by his treating physicians.

Yang, No. M2012-01196-WC-R3-WC, slip op. at 9.

Initially, we agree with the Panel that if an employee retires or resigns or declines an offer to return to work for either personal or other reasons that are not related to his or her workplace injury, the employee has had a meaningful return to work and is subject to the one-and-one-half-times cap. This fact-intensive determination, however, is typically best left to the trial judge who has had the opportunity to observe the witnesses, determine their credibility, and assess "the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to either return to or remain at work." Tryon, 254 S.W.3d at 328. Here, the trial court accredited the explanation of the Employee as to why he accepted the VTP and found his decision to be reasonable. See Howell, 346 S.W.3d at 473 (deferring to credibility determinations of trial judge who heard testimony firsthand and concluded that employee's decision to resign was reasonable under the circumstances). The evidence, in our view, does not preponderate against the findings of the trial court. In consequence, the Employee is not limited to the one-and-one-half-times

multiplier because the accredited testimony is that he voluntarily resigned for reasons related to his work injuries. See, e.g., House v. Nissan N. Am., No. M2011-01481-WC-R3-WC, 2012 WL 3041343, at *4-5 (Tenn. Workers' Comp. Panel July 26, 2012) (applying higher cap, even though employee accepted voluntary buyout, because he continued to experience physical problems due to his work injuries); Massey v. Nissan N. Am., Inc., No. M2010-00151-WC-R3-WC, 2011 WL 1434621, at *6-7 (Tenn. Workers' Comp. Panel Apr. 14, 2011) (applying higher cap, even though employee accepted voluntary buyout, because he was unable to complete his job timely and believed he could not perform any other jobs for employer); cf. Blake v. Nissan N. Am., Inc., No. M2009-02173-WC-R3-WC, 2010 WL 4513390, at *2, *4-5 (Tenn. Workers' Comp. Panel Nov. 10, 2010) (applying lower cap because trial court determined that employee accepted voluntary buyout for reasons unrelated to his work injuries).

As to the determination of the Special Workers' Compensation Appeals Panel that the Employee did not act reasonably because he accepted the VTP while undergoing treatment and prior to reaching maximum medical improvement, we find this analysis to be misplaced. See Lay v. Scott Cnty. Sheriff's Dep't, 109 S.W.3d 293, 298-99 (Tenn. 2003) (declining to hold that "whether a 'meaningful return to work' occurred must be determined after the employee reaches maximum medical improvement" because such a ruling would be "contrary to the holdings of other cases and to the purpose of [Tennessee Code Annotated s]ection 50-6-241"). Nothing in section 50-6-241 requires that the question of whether an employee has had a meaningful return to work with his or her pre-injury employer be evaluated only after the employee has completed treatment and has reached maximum medical improvement. See Young v. Cumberland Cnty. Med. Ctr., No. M2005-02550-WC-R3-CV, 2007 WL 439015, at *5 (Tenn. Workers' Comp. Panel Feb. 12, 2007) (declining to apply lower statutory cap because employer failed to offer meaningful employment after employee resigned while she was still undergoing treatment and before she had reached maximum medical improvement); Vowell v. Clinton Home Ctr., No. E2004-01477-WC-R3-CV, 2005 WL 1474596, at *4 (Tenn. Workers' Comp. Panel June 22, 2005) (applying lower statutory cap because even though employee was unable to work during the course of his treatment and recovery, employer again offered a meaningful return to work after employee reached maximum medical improvement, and this offer was unreasonably refused).

### IV. Conclusion

Because the Employee acted reasonably under the circumstances by accepting the buyout for reasons related to his work injuries, his permanent partial disability benefits are not subject to the one-and-one-half-times multiplier. The judgment of the Special Workers' Compensation Appeals Panel is, therefore, reversed in part, and the judgment of the trial court is reinstated as to the award of 90% permanent partial disability benefits. The

judgment of the Special Workers' Compensation Appeals Panel is affirmed in all other respects.  Costs of this appeal are taxed to Nissan North America, Inc. and Ace American Insurance Company, and their surety, for which execution may issue if necessary.


_____

GARY R. WADE, CHIEF JUSTICE