IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 6, 2022 Session at Union University

**HAROLD ALLEN VAUGHN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-19-260, 15-231       Donald H. Allen, Judge**

_____

**No. W2021-00354-CCA-R3-PC**
_____

The petitioner, Harold Allen Vaughn, appeals the post-conviction court's dismissal of his petition for post-conviction relief, arguing the post-conviction court erred in relying on our supreme court's decision in *Cordarius Maxwell v. State*, No. 2018-00318-SC-R11-PC (Tenn. Sept. 3, 2019) (order) and finding his petition procedurally deficient. Upon our review of the record, the applicable law, and the briefs of the parties, we affirm the dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, PJ., and CAMILLE R. MCMULLEN, J., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Harold Allen Vaughn.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

I.  Direct Appeal

On October 15, 2015, the petitioner was convicted of attempted first-degree murder, aggravated assault, and especially aggravated robbery for which he received an effective sentence of twenty-five years in the Tennessee Department of Correction. *State v. Harold Allen Vaughn*, No. W2016-00131-CCA-R3-CD, 2016 WL 7102748, at *10

(Tenn. Crim. App. Dec. 6, 2016), *perm. app. granted and case remanded*, No. W2016-00131-SC-R11-CD (Tenn. Nov. 17, 2017) (order).

The petitioner appealed, and this Court affirmed his convictions but remanded the case for entry of a separate judgment form in Count 2, reflecting that the petitioner's aggravated assault conviction was merged with his attempted first-degree murder conviction in Count 1. *Id.* at *10. On November 17, 2017, the Tennessee Supreme Court granted the petitioner's pro se application for permission to appeal and remanded the case to this Court for reconsideration in light of its opinion in *State v. Henderson*, 531 S.W.3d 687 (Tenn. 2017). *State v. Harold Allen Vaughn*, No. W2016-00131-SC-R11-CD (Tenn. Nov. 17, 2017) (order). On remand, this Court vacated the petitioner's conviction for especially aggravated robbery, modified the conviction to aggravated robbery, and remanded the case to the trial court for a new sentencing hearing and for entry of an amended judgment form reflecting this modified conviction and sentence and for entry of corrected judgment forms in Counts 1 and 2 as specified in its opinion. In all other respects, the judgments of the trial court were affirmed. *State v. Harold Allen Vaughn*, W2016-00131-CCA-R3-CD, 2018 WL 1597421, at *1 (Tenn. Crim. App. March 29, 2019), *no perm. app. filed.*

In this Court's opinion on remand from the Tennessee Supreme Court, the Court summarized the evidence supporting the petitioner's convictions as follows:

> Christopher Tompkins, the victim, testified that on November 24, 2014, he traveled by bus from Memphis, Tennessee, to Jackson, Tennessee, to transport a car for his employer. Upon arriving in Jackson, the victim learned that the car at issue was disabled, so he walked to Love's Truck Stop to call his friend for a ride back to Memphis. While he was waiting on his ride, the victim met Bethany Long, an employee at the Hardee's restaurant that was located inside the truck stop. The victim later met Long's boyfriend, the [petitioner], and the [petitioner]'s friend, James Martin, when they came into the restaurant to pick up Long after her shift. As the [petitioner], Long, and Martin were leaving the restaurant, the [petitioner] offered to give the victim a ride if his friend failed to pick him up, and they exchanged phone numbers. Later, after his ride failed to appear, the victim called the [petitioner] and offered to pay him $100 if he would drive him to Memphis, and the [petitioner] accepted. Around 10:45 p.m., the [petitioner] and Martin, who were riding in a silver car driven by a female whom the victim had not met, returned to the truck stop. They picked up the victim, and the victim gave the [petitioner] $40 for gas. Shortly after leaving the truck stop, the female driver claimed she had a family emergency, and she drove the

- 2 -

[petitioner], Martin, and the victim to the [petitioner]'s car, which was parked at the Lincoln Courts housing complex. After picking up the [petitioner]'s car, the [petitioner], Martin, and the victim rode to another gas station where the victim purchased gas for the [petitioner]'s car and two beers. The [petitioner] then picked up Long, who had a valid driver's license, so she could drive the [petitioner]'s car to Memphis.

The victim said that shortly after they began driving to Memphis, Long declared that she did not feel well and exited Interstate 40. The [petitioner] got into the driver's seat and began driving away from the interstate and into a rural area. The victim, who had been tracking the route to Memphis with the GPS on his phone, informed the [petitioner] he was going the wrong way, which the [petitioner] denied. The [petitioner] continued to drive in the wrong direction and suddenly stopped his car in a deserted area and asked the victim to help him with his headlights, which the [petitioner] claimed were not operating properly. The victim declined and suggested that Martin help the [petitioner] with his headlights. When Martin exited the car to assist with the headlights, the victim remained in the car and texted his friend the name of the road they were on and told her to call the police because "something is up with this guy." Moments later, the [petitioner] appeared on the passenger side of the car and pointed a gun in the victim's face.

The victim said the [petitioner] continued to hold him at gunpoint and directed Martin to search him. The [petitioner] and Martin searched the victim while he was still seated in the car and then pulled him out of the car and continued to search him, taking the victim's wallet, phone, tablet, and two bags of personal belongings and clothes. At that point, the [petitioner] put the gun to the victim's temple and told him to lie down on the ground, and the victim told him, "Man, you already got everything, you got the gun, you in control. You already done robbed me." The victim said he did not immediately get on the ground because he believed the [petitioner] was going to kill him. Instead, the victim "looked up to [his] right where the gun [was], and as [he] did that, [the petitioner] pulled the trigger." The first bullet went through the victim's jaw, ricocheted off his back tooth, and came to rest in his mouth. After the first shot, the victim started running and the [petitioner] shot him four more times. The second shot grazed his neck, the third and fourth shots entered his upper right arm, and the fifth shot hit him in the back. As the victim ran toward the woods, the [petitioner] fired one more shot in his direction but missed. The victim stated that the pain from his gunshot

- 3 -

wounds "was probably the worst I've felt in my life" and that although he was in shock and bleeding, he was able to walk. After the shooting, the [petitioner], Martin, and Long drove away, and the victim walked to a nearby house, where the resident called 9-1-1. The victim asserted that the incident seemed "continuous" to him. However, he admitted that the [petitioner] shot him "25, 30 seconds" after taking his belongings.

James Martin testified that on November 24, 2014, the [petitioner] picked him up to hang out. Martin said that while he and the [petitioner] were waiting on Long, another friend, to finish her shift at Hardees, the victim approached them and offered to pay $100 for a ride to Memphis. Shortly thereafter, Martin and the [petitioner] took Long home and then switched cars and rode with a female friend of the [petitioner]'s back to the truck stop to pick up the victim. Once the victim got in the car, the female friend began "acting nervous," said "she had an emergency or something," and dropped them off at the [petitioner]'s car. Then the [petitioner], Martin, and the victim rode in the [petitioner]'s car to pick up Long so she could drive them to Memphis. After Long began driving on the interstate toward Memphis, she said she felt sick and pulled over so the [petitioner] could drive.

Martin said the [petitioner] began driving away from the interstate and into a rural area. He then pulled over to check his headlights and told Martin to help him. As Martin and the [petitioner] were standing outside the car, the [petitioner] told Martin to "tell the victim to get out of the car and check the headlights." Martin attempted to get the victim to exit the car, but the victim refused. At that point, the [petitioner] told Martin to "[g]o over there and get [the victim] out of the car[.]" When Martin declined, the [petitioner] tried to hand him a gun. Martin said that when he refused to take the gun, the [petitioner] got angry and walked over to the victim, put the gun in his face, and told him, "[D]on't move, or I'll shoot you." Then, the [petitioner] demanded that Martin search the victim's pockets, and Martin complied because the [petitioner] had a gun and he "didn't think [he] had a choice." While the victim was still sitting in the car, Martin took the victim's wallet and cell phone and placed them in the back seat.

Martin told the [petitioner] that the victim did not have anything else and to "let him go," but the [petitioner] refused to release the victim. At that point, Martin said he "was nervous" and Long, who was sitting in the back seat, "looked scared." Martin heard the [petitioner] tell the victim "to get out

- 4 -

[of] the car" and "to lay [sic] down" and then heard the victim asking the [petitioner] to "let him go" because "he didn't have nothing." Martin ran around to the driver's side of the car because he "was scared" and heard a gunshot. He confirmed that at the time the first shot was fired, the [petitioner] had the gun and that he heard "more than two" shots fired during the incident. Martin said he was unable to see what happened during the shooting because he was on the driver's side of the car, and the [petitioner] and the victim were on the passenger's side. After the shooting, the [petitioner] got into the front passenger seat of the car, told Martin to get in the car, and ordered Long to get in the front seat so she could drive them away from the scene.

. . .

The [petitioner] presented no proof at trial. Following its deliberations, the jury found the [petitioner] guilty of all three remaining counts.

*Harold Allen Vaughn*, W2016-00131-CCA-R3-CD, 2018 WL 1597421, at *1-3.

## II. Post-Conviction

On October 15, 2019, the petitioner, through counsel, filed a petition for post-conviction relief, alleging, among other issues, several claims of ineffective assistance of trial counsel. The State filed a response and motion to dismiss on October 31, 2019. In its motion, the State argued the petition should be dismissed as procedurally deficient because it was filed by counsel but not signed and verified by the petitioner. The petitioner took no further action until filing an amended petition for post-conviction relief more than one year later on December 7, 2020.

A hearing was held on January 20, 2021. Before hearing proof on the merits of the petitioner's claims, the post-conviction court heard argument concerning the State's motion to dismiss. In support of its motion, the State noted that the original petition was procedurally defective as it was not signed or verified by the petitioner as required by Tennessee Code Annotated § 40-30-104(d) and (e). The State also noted that while the amended petition was signed and verified by the petitioner, it was not filed until one year and two months after the State had placed the petitioner on notice of his deficient petition. Thus, the amended petition was filed well outside the one-year statute of limitations.[1]

---

[1] The amended judgments following remand by this Court are not part of the record nor are they referenced in the petition for post-conviction relief. However, the post-conviction court found that the

According to the State, the initial petition was a nullity because it was not verified and failed to conform with the statute, and the amended petition was untimely. Therefore, the petition was not properly before the post-conviction court and should be dismissed.

While acknowledging his original petition was procedurally deficient, the petitioner argued the amended petition "relates back" to the original petition because he signed and verified the amended petition and specifically referenced and incorporated the original petition. Therefore, the petitioner essentially argued the petitions were one document which meets the statutory requirements. Thus, any defect in the original petition was cured by the amended petition and the untimeliness of the amended petition was cured by the timely filing of the original petition.

The State, relying on our supreme court's decision in *Cordarius Maxwell v. State*, No. 2018-00318-SC-R11-PC (Tenn. Sept. 3, 2019) (order), argued that because the petitioner was represented by counsel at the time he filed his original petition for post-conviction relief, he was not entitled to an opportunity to resolve any procedural deficiencies under Tennessee Code Annotated § 40-40-106(d). In response, the petitioner argued that *Maxwell* was an "unpublished per curiam decision" of our supreme court and was both distinguishable and of no precedential value.

After hearing the arguments of the parties, reviewing the procedural history of the petitioner's case, and reviewing our supreme court's decision in *Maxwell*, the post-conviction court found the original petition was procedurally deficient and the amended petition was untimely. As a result, the post-conviction court dismissed the petition. This timely appeal followed.

### *Analysis*

On appeal, the petitioner contends the post-conviction court erred in dismissing his petition. More specifically, the petitioner insists the post-conviction court erred in relying on our supreme court's "unpublished [per curiam] decision" in *Maxwell*. In addition to arguing *Maxwell* has no precedential value, the petitioner contends that the facts of the instant case are distinguishable from those in *Maxwell*. Furthermore, the petitioner contends that his amended petition, which was signed and verified, "relates back" to the original petition and cures any defects in the original petition. The State, however, argues that the petitioner's case is not distinguishable from *Maxwell* and that the post-conviction court correctly dismissed the original petition as procedurally deficient and the amended

---

amended judgments were entered on October 15, 2018, meaning the petitioner had until October 15, 2019, to file his petition for post-conviction relief.

petition as untimely. Upon our review of the record, the briefs of the parties, and the applicable law, we affirm the decision of the post-conviction court.

Initially, we will address the petitioner's claim that our supreme court's decision in *Maxwell* is not precedential and/or is limited only to that case. Throughout his brief and during oral argument, the petitioner refers to our supreme court's decision in *Maxwell* as an "unpublished [per curiam] decision" and, therefore, argues the decision is persuasive at best. First, we note that contrary to the petitioner's claim, the court's decision in *Maxwell* is published. The caption of the order includes the words "For Publication." *See* Appellate Case Search, *Cordarius Maxwell v. State*, W2018-00318-SC-R11-PC, Order Dated Sept. 3,2019,https://www.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=76775&Number=True. Though the decision may not be found on some legal databases, it is not only designated for publication but also is found on the Administrative Office of the Courts' website. Accordingly, contrary to the petitioner's claim, the court's decision is published.

Next, the petitioner seems to suggest that a per curiam decision is somehow less precedential than a decision signed by each member of the court. While his argument is a bit unclear, we need to go no further than the definition of per curiam to resolve the petitioner's claim. Per Black's Law Dictionary, per curiam is defined as, "By the court. A phrase used to distinguish an opinion of the whole court from an opinion written by any one judge." *Black's Law Dictionary* 1136 (6th ed. 1990). The simplest reading of the definition is that *Maxwell* is a decision in which each member of the court agreed with the rationale and result. In short, *Maxwell* is a unanimous decision of our supreme court. Thus, while the petitioner's argument seems to suggest that a per curiam decision somehow diminishes the authoritative value of the decision, the definition of per curiam suggests that the decision carries the full weight of the court. Having resolved the petitioner's claim concerning the precedential nature of our supreme court's decision in *Maxwell*, we turn to the merits of the petitioner's claim.

In filing a petition for post-conviction relief, a petitioner "shall include all claims known to the petitioner for granting post-conviction relief and *shall verify under oath* that all the claims are included." Tenn. Code Ann. § 40-30-104(d) (emphasis added). Both the original petition and any amended petitions "shall be verified under oath." Tenn. Code Ann. § 40-30-104(e); *see* Tenn. Sup. Ct. R. 28, § 5(E)(2); *Hutcherson v. State*, 75 S.W.3d 929, 931 (Tenn. Crim. App. 2001) ("It is imperative that factual allegations be made and that the petition be verified as true under oath."). The "goal" of this statutory requirement is "to deter or to reduce intentionally false allegations primarily made by petitioners by exposing them to aggravated perjury charges." *Sexton v. State*, 151 S.W.3d 525, 530 (Tenn. Crim. App. 2004). The verification requirement "is not satisfied by counsel's

certification," and "[w]hether prepared by a petitioner or by counsel, the petition and its amendments must be verified under oath." *Id.*

Pursuant to statute and the Tennessee Supreme Court Rules, the petitioner would have had the opportunity to correct the deficiency had he prepared and filed his petition pro se. Tenn. S. Ct. R. 28, § 6(B)(4)(b) (providing that "[n]o pro se petition shall be dismissed for failure to follow the prescribed form until the court has given petitioner a reasonable opportunity to amend the petition with the assistance of counsel"); *see* Tenn. Code Ann. 40-30-106(d) (providing that if "the petition was filed pro se, the judge may enter an order stating that the petitioner must file an amended petition that complies with this section within fifteen (15) days or the petition will be dismissed").

As noted *supra*, the petitioner, through counsel, filed his petition for post-conviction relief a few days prior to the running of the one-year statute of limitations. The petition, however, was not verified under oath by the petitioner as required by Tennessee Code Annotated section 40-30-104(d) and (e). Within two weeks of the petitioner's filing, the State filed a response moving to have the petition dismissed for, among several reasons, the petitioner's failure to sign and verify his petition under oath. The petitioner did not file a response or make any immediate effort to cure the alleged defect. Then, over one year after the State filed its motion to dismiss, noting the procedural defects in the petitioner's initial filing, the petitioner filed an amended petition, which was signed and verified by the petitioner. Relying on our supreme court's opinion in *Maxwell*, the post-conviction court dismissed the petition stating,

But, you know, [post-conviction counsel], retained counsel, did not file any amended petition, did not take any action to verify under oath through his client for over a year, a year and two months. So, even though the State filed their motion to dismiss on October 31st of 2019, it wasn't until December the 7th of 2020 that [post-conviction counsel] made any efforts to try to amend the petition by correcting the deficiency, and the reason I say that, because, you know, the way I read this statute, if there is a deficiency, it needs to be corrected quickly. It shouldn't be a year and two months later before counsel attempts to correct some kind of deficiency. But even regardless of that, I still have to go back to what the [Tennessee] Supreme Court says and that is that this [c]ourt, it says, "only if the petition was filed by an unrepresented person," which in this case, it was not filed by an unrepresented person. [The petitioner] was represented by retained counsel, [post-conviction counsel], when this petition was filed and so, it says, the trial court, "if the petition was filed by an unrepresented person, that a trial

court retains any authority to allow the filing of a complaint amended petition."

So, the way I read that, I don't even have the authority to allow an amended petition under these circumstances. You know, I mean, I think it's too late, you know. You have to file it within a year. That's what the legislature. Again, this isn't a constitutional matter. This is something the legislature has mandated, that if you're going to file a petition for post-conviction relief, you've got to file it in accordance [with] what the Post-Conviction Relief Act says, and it has to be filed within one year from the action of the highest court, which I think it was filed within the original one-year, but it has to be verified, and it wasn't verified by the petitioner at that time.

So, I'm going to grant the State's motion to dismiss the petition for post-conviction relief, specifically my ruling is because I'm going on what our Tennessee Supreme Court says in the *Cordarius Maxwell* opinion that the court simply doesn't have the authority at this point to allow any kind of amended petition to be heard.

. . .

Well, and again, mean, I'm, you know, I'm reading what the statute says under both those code sections, 40-30-104(e), Tennessee Code Section 40-30-106(d), and it still goes back to what the [Tennessee] Supreme Court says. It says, "Nothing in Tennessee Code Annotated 40-30-106(d) contemplates that counsel will," that is [post-conviction counsel], "will be given an opportunity to correct a deficiency in a post-conviction relief petition. It is only if the petition was filed by an unrepresented person," which is not the case here, "that a trial court retains any authority to allow the filing of a[] compl[ia]nt amended petition."

So, you know, again, you know, I'm saying, I'm not even sure I have the authority to allow him to file an amended petition or a verified petition under the circumstances, you know.

And I will say this, too. Obviously, [post-conviction] counsel, you know, waited for a year and two months to try to file any kind of verified petition, even though they were put on notice by the State that the State felt that it was not filed properly, and it was unverified. That's what the State in

their answer said and that's what the basis for the motion to dismiss that I'm granting today. I'm basing the – that's what I'm basing my decision on.

In *Maxwell*, our supreme court examined the difference between an unverified petition filed by a pro se petitioner versus an unverified petition filed by a petitioner represented by counsel. *Cordarius Maxwell v. State*, No. 2018-00318-SC-R11-PC (Tenn. Sept. 3, 2019) (order). In *Maxwell*, as in the present, the petitioner was represented by counsel and filed a petition that was not signed and verified by the petitioner. *Id.* The State moved to dismiss on those procedural grounds, and the petitioner did not initially take any measures to cure the defect. *Id.* The post-conviction court dismissed the petition because it was not verified by the petitioner, and the petitioner appealed. *Id.* A panel of this Court reversed the ruling of the post-conviction court, and the State filed an application for permission to appeal to our supreme court. *Id.* at *2. By order, our supreme court granted the State's application, reversed the decision of this Court, and reinstated the decision of the post-conviction court. *Id.* at *3.

In determining that a petitioner who is represented by counsel is not afforded the same opportunity as a pro se litigant to cure defects in their original petition, our supreme court held,

> Post-conviction review is not required by constitutional principles. *See Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013). Such review is afforded solely as a matter of legislative grace – it is "entirely a creature of statute." *Bush v. State*, 428 S.W.3d 1, 15-16 (Tenn. 2014) (citing *Pike v. State*, 164 S.W.3d 257, 262 (Tenn. 2005)). Accordingly, the "availability and scope of post-conviction relief lies within the discretion of the General Assembly." *Id.* at 15. The legislature "may set up reasonable procedural requirements," and post-conviction claims "may be terminated for failure to comply with a reasonable procedural rule." *Seals v. State*, 23 S.W.3d 272, 277 (Tenn. 2000) (internal citation omitted). Those requirements are contained in Tennessee Code Annotated section 40-30-104. The provision at issue here is the requirement contained in subsection (e) that a petition for post-conviction relief and any amended petition "shall be verified under oath." Tenn. Code Ann. § 40-30-104(e); *see also* Tenn. Sup. Ct. R. 28, § 5(E)(2) (requiring that a post-conviction petition include an affidavit from the petitioner).

> Despite the mandatory language of the content requirements, the legislature has granted trial courts the limited authority to permit a pro se petitioner to correct a deficient petition. Tenn. Code Ann. § 40-30-106(d);

*see also* Tenn. Sup. Ct. R. 28, § 6(B)(4)(b). Petitions that are incomplete shall be filed by the clerk of the court, but shall be completed as set forth in an order entered in accordance with section 40-30-106(d). Tenn. Code Ann. § 40-30-104(b). However, nothing in section 106(d) contemplates that counsel will be given an opportunity to correct a deficiency. It is only if the petition was filed by an unrepresented person that a trial court retains any authority to allow the filing of a compliant amended petition. Tenn. Code Ann. § 40-30-106(d).

The legislature did not extend the same correction opportunity to petitioners represented by counsel. "It is primarily the role of the legislature to determine the public policy of this state," and not that of the judiciary. *Cary v. Cary*, 937 S.W.2d 777, 781 (Tenn. 1996) (citing *Crawford v. Buckner*, 839 S.W.2d 754, 759 (Tenn. 1992)); *see also Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016). "Courts are not at liberty to rewrite statutes." *Emory v. Memphis City Sch. Bd. of Educ.*, 514 S.W.3d 129, 145 (Tenn. 2017) (citations omitted); *see also Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013) (quoting *Britt v. Dyer's Emp't Agency, Inc.*, 396 S.W.3d 519, 523 (Tenn. 2013)) ("'[c]ourts may neither alter or amend statutes nor substitute [their] own policy judgments for those of the General Assembly.'").

*Maxwell*, No. 2018-00318-SC-R11-PC (Tenn. Sept. 3, 2019) (order). Contrary to the claim made by the petitioner, we are bound by the holding in the published and unanimous decision of our supreme court. We, therefore, must conclude that the post-conviction court did not err in dismissing the post-conviction petition for failure to comply with the requirements of Tennessee Code Annotated section 40-30-104(d) and (e).

In addition to his claim that *Maxwell* is not binding on this Court, the defendant also contends that his case is factually distinguishable from *Maxwell*. We disagree. While the petitioner in *Maxwell* attempted to cure his deficient petition by way of a motion to reconsider after the post-conviction court dismissed his petition and the petitioner in this case filed a verified amended petition prior to his petition being dismissed, we find the distinction drawn by the petitioner as one without a difference. As noted by the State, the petitioner's original filing was deficient in that it failed to comply with the statutory requirements, and, as noted by our supreme court, the legislature provided "no correction opportunity" to petitioners represented by counsel. Therefore, the petitioner's initial filing was not properly before the post-conviction court and was, as described by the State, a nullity. Moreover, the verified amended petition filed by the petitioner was filed over one year after the State's motion to dismiss, meaning it was filed over two years after the

running of the one-year statute of limitations. Hence, the post-conviction court also lacked jurisdiction to consider the amended petition, despite the fact that it was verified by the petitioner.

Had the petitioner filed his verified amended petition prior to the expiration of the one-year statute of limitations, his argument might be more persuasive. However, the petitioner took no action to cure the defects in his original petition until well over one year after the expiration of the statute of limitations. Similar to the petitioner in *Maxwell*, the petitioner in the instant matter was represented by counsel and failed to file a statutorily compliant petition within the one-year statute of limitations. Thus, just as in *Maxwell*, the post-conviction court properly dismissed the petitioner's petition for post-conviction relief.

As part of his argument that his case is distinguishable from *Maxwell*, the petitioner, relying on Tennessee Rules of Civil Procedure 1 and 15.03 and this Court's opinion in *Roger Harris v. State*, No. E1999-02056-CCA-R3-PC, 2000 WL 1038121 (Tenn. Crim. App. July 28, 2000), *no perm. app. filed*, asserts that the "relation back doctrine" should apply so that his verified amended complaint, which was untimely, would be considered to have been filed when the initial petition was filed. The petitioner's argument fails for several reasons.

First, as discussed at length above, per our supreme court's opinion in *Maxwell*, the statute does not allow an amended petition to correct a verification deficiency in an initial petition which was filed with the aid of counsel. Second, Supreme Court Rule 28, states: "Neither the Tennessee Rules of Civil Procedure nor the Tennessee Rules of Criminal Procedure apply to post-conviction proceedings except as specifically provided by these rules." Tenn. R. Sup. Ct. 28 § 3(B). Neither Rule 1 nor Rule 15.3 of the Tennessee Rules of Civil Procedure are authorized within the rules governing post-conviction procedures. Third, the petitioner's reliance on *Harris*, is misplaced. In *Harris*¸ the petitioner's initial pro se petition was filed before the May 1995 effective date of Tennessee Code Annotated. 40-30-106(d) and its requirement that the petition be verified. *Id.* at *1. His amended petition was filed after that requirement became the law. *Id.* This Court held that the law prior to May 1995 established the requirements for both the petitions filed prior to that date and the amendments to those petitions filed after that date. *Id.* Thus, for that unique situation where the initial and amended petitions straddled the effective date of the verification requirement, there was a "relating back" to the prior law and the amendments were not required to be verified. *Id.* at *2. Such is not the case in this matter, and therefore, *Harris* has no application to this case.

Finally, though not included in the petitioner's brief but based on comments made during the post-conviction hearing and during oral argument before this Court, we will

quickly address whether the petitioner's initial filing established a "next friend" basis upon which to proceed. During the post-conviction hearing and at oral argument before this Court, counsel for the petitioner made statements concerning the pandemic and its effect on his ability to meet with the petitioner and statements concerning the petitioner's inability to understand and unwillingness to sign the petition while discussing it over the telephone with counsel. These and other similar statements by post-conviction counsel appear to be offered as a reason to allow the petitioner's family, with the aid of post-conviction counsel, to file the unverified petition on behalf of the petitioner and, thus, excuse the procedural defects with the petition. However, in order to establish a basis to proceed as "next friend," one must make a prima facie showing of an inmate's present mental incompetency "by attaching to the petition affidavits, depositions, medical reports, or other credible evidence that contain specific factual allegations showing the petitioner's incompetence." *Holton v. State*, 201 S.W.3d 626, 634 35 (Tenn. 2006) (citing *State v. Nix,* 40 S.W.3d 459, 464 (Tenn. 2001)). Mere assertions or allegations of past or present mental incompetency are not sufficient; instead, the supporting evidence must satisfy the standard required in determining whether mental incompetency may toll the post-conviction statute of limitations. *Id.* The petitioner has failed to make such a showing and is not entitled to relief under this theory as well.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
J. ROSS DYER, JUDGE

- 13 -